No. 01-831

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 184

PONDEROSA PINES RANCH, INC.,

     Plaintiff and Respondent,

    v.

CHERIE L. HEVNER,

     Defendant and Appellant.


APPEAL FROM:    District Court of the Eighteenth Judicial District,
                     In and for the County of Gallatin,
                     The Honorable Mark L. Guenther, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          Charles F. Angel, Angel Law Firm, Bozeman, Montana

     For Respondent:

          Robert K. Baldwin, Goetz, Gallik, Baldwin & Dolan, P.C., Bozeman,
          Montana


          Submitted on Briefs:  March 28, 2002

                     Decided:    August  27,  2002

Filed:


_____
                    Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1    Cherie L. Hevner appeals from an Order Granting Partial Summary Judgment and an Order Awarding Fees and Costs from the Eighteenth Judicial District Court, Gallatin County.  We affirm and remand for a determination of attorney's fees.

¶2    The following issues are dispositive of this appeal:

¶3    1.  Did the District Court err in granting summary judgment to Ponderosa Pines Ranch, Inc.?

¶4    2.  Did the District Court err in awarding fees and costs under Rule 11 and § 37-61-421, MCA?

¶5    3.  Should this Court award Ponderosa Pines Ranch, Inc., attorney's fees under Rule 32, M.R.App.P?

BACKGROUND

¶6    In the early 1970's, Ponderosa Pines Ranch, Inc. ("Ponderosa") acquired approximately 13,000 acres of land in Gallatin County, Montana.  Ponderosa subdivided that property into around 1,000 lots.  On May 18, 1979, Ponderosa recorded a Declaration of Easements and Rights-of-Way (the "Declaration").  In the Declaration, Ponderosa granted and reserved easements across and in favor of all lots within the development.  The Declaration did not specify the location of any particular easement.

¶7    In 1985, Hevner purchased a lot in the development from Ponderosa.  Hevner and Ponderosa executed a warranty deed, dated May 25, 1985, transferring the lot to Hevner.  The deed incorporated the Declaration and its respective easements.

2

¶8   Beginning sometime around 1996, a dispute arose concerning the portion of Homestead Road that runs across Hevner's property. Hevner claims she made several attempts to stop others from using the road.  During the summer of 2000, Hevner successfully blocked the Homestead Road by placing a fifth wheel trailer and some debris on the roadway.

¶9   Ponderosa then filed this action.  In its complaint, Ponderosa alleged that it had an easement on Homestead Road.  Ponderosa also sought monetary, injunctive and declaratory relief.  On August 23, 2000, the court granted Ponderosa a preliminary injunction requiring Hevner not to interfere with Homestead Road.

¶10  Ponderosa then moved for partial summary judgment, arguing that it had an easement on Homestead Road by express reservation, by implication and by prescription.  It supported that motion with several affidavits and aerial photographs taken by the United States Department of Agriculture in 1979 and 1991.  The court held a hearing regarding the motion for partial summary judgment on March 19, 2001.  It then granted Ponderosa's motion on August 3, 2001.

¶11  Following the court's order, Ponderosa moved for an award of fees and costs under Rule 11, M.R.Civ.P., and § 37-61-421, MCA.  On September 19, 2001, the court held a hearing regarding the motion for attorney's fees.  The court then issued an Order Awarding Fees and Costs in favor of Ponderosa on October 4, 2001.

¶12  Hevner appealed both orders.

3

¶13 We review a district court's grant of summary judgment de novo, applying the same evaluation under Rule 56, M.R.Civ.P., as the district court. *See Vivier v. State Dep't of Transp.*, 2001 MT 221, ¶ 5, 306 Mont. 454, ¶ 5, 35 P.3d 958, ¶ 5; *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. In *Bruner*, we stated that:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Bruner*, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted).

¶14 When reviewing a district court's decision to impose Rule 11 sanctions, we use a combined standard: "whether the trial court's findings of fact are clearly erroneous and whether its conclusions constitute an abuse of discretion." *Madison Addition Architectural Comm. v. Youngwirth*, 2000 MT 293, ¶ 10, 302 Mont. 302, ¶ 10, 15 P.3d 1175, ¶ 10.

ISSUE ONE

¶15 Did the District Court err in granting summary judgment to Ponderosa Pines Ranch, Inc.?

¶16 An easement is a nonpossessory interest in land that gives a person the right to use the land of another for a specific purpose. *See Ruana v. Grigonis* (1996), 275 Mont. 441, 447, 913 P.2d 1247, 1251; *Kuhlman v. Rivera* (1985), 216 Mont. 353, 358, 701 P.2d 982,

985.  A person cannot create, grant or transfer an easement except by operation of law, by an instrument in writing or by prescription.  *See Ruana*, 275 Mont. at 447, 913 P.2d at 1251; *Wild River Adventures, Inc. v. Board of Trustees of Sch. Dist. No. 8* (1991), 248 Mont. 397, 400, 812 P.2d 344, 346.  A person creates an easement by reservation through written documents of conveyance.  *See Burleson v. Kinsey-Cartwright*, 2000 MT 278, ¶ 16, 302 Mont. 141, ¶ 16, 13 P.3d 384, ¶ 16.  Where a document fails adequately to fix the location of an easement, a court may ascertain the location by use.  *See* JON W. BRUCE AND JAMES W. ELY, THE LAW OF EASEMENTS AND LICENSES IN LAND § 7:6, at 7-12 (2001).

¶17  After reviewing the evidence presented by the parties, the District Court concluded that Homestead Road existed at the time of the Declaration and at the time Hevner bought the property from Ponderosa.  Furthermore, the court held that the road was open and visible to Hevner.  Any dispute about these facts, according to the court, were not genuine.

¶18  Ponderosa presented the court with affidavits and physical evidence to demonstrate that Homestead Road existed across Hevner's property.  Roberta Moche, the President of Ponderosa, testified by affidavit that a series of roads existed on the property when Ponderosa first began its development.  These roads included Homestead Road.  She also stated that Hevner and other individuals had used Homestead Road at will to access other property.  This use had continued uninterrupted until 1999, when Hevner briefly blocked the road.

5

¶19 Several disinterested witnesses also testified via affidavit. Mel Obrigewitch testified that he ran cattle around Hevner's property and had driven his truck up Homestead Road since 1978. Donna Buzdikian stated that she had used the road since 1976 for sightseeing and her husband used the road to haul grain. Art Koenes testified that he had hauled grain on Homestead Road since 1975.

¶20 Ponderosa also provided two aerial photographs to prove that the location of Homestead Road had not moved. The photographs were dated September 1, 1979, and July 5, 1991. The dates of these photos correspond to approximately six years before and after she bought the property, respectively. Ray Center, a licensed surveyor, testified that Homestead Road appeared in both aerial maps and in the same location as it presently runs across Hevner's property. Center also testified that no evidence existed on the ground that the road had existed in a different location.

¶21 Hevner counters that the court failed to "properly authenticate" the aerial photographs but offers no statute or case law in support of this assertion. Instead, she simply argues that the photos do not label Hevner's lot, specify what area they depict or indicate from what altitude they were taken. Generally, deciding whether an adequate foundation exists for the admissibility of evidence is within the sound discretion of the district court. *See State v. Delaney*, 1999 MT 317, ¶ 14, 297 Mont. 263, ¶ 14, 991 P.2d 461, ¶ 14. The court makes this decision according to Rule 104(a), M.R.Evid. *See Delaney*, ¶ 14. The rule

6

states that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court. In making its determination it is not bound by the rules of evidence except those with respect to privileges." Rule 104(a), M.R.Evid. A proponent satisfies the requirement of authentication by presenting evidence sufficient to satisfy a court's finding that "the matter in question is what its proponent claims." Rule 901(a), M.R.Evid.

¶22 Here, a certificate from the United States Department of Agriculture accompanied each photo stating that they were taken of Gallatin County, Montana. Center testified that the photos depicted Hevner's lot and surrounding property. On these bases, Ponderosa filed a motion asking the District Court to take judicial notice that the photos were true and accurate copies of aerial photographs of the relevant area. Hevner never opposed Ponderosa's motion. For these reasons, we conclude that the court properly took judicial notice of the photos' accuracy and accepted them as evidence.

¶23 Given the whole of this evidence, we conclude that Ponderosa demonstrated that Homestead Road existed in its present location at the time Hevner bought her lot. Having done so, the burden then shifted to Hevner to come forth with proof that Homestead Road did not exist. *See Bruner*, 272 Mont. at 264, 900 P.2d at 903. She failed to do this.

¶24 Hevner provided little to the District Court in support of her contention that Homestead Road had not existed when she purchased

7

her property other than simple denials and speculation. Her primary argument is that the road did not exist at the time she purchased her lot. Her testimony, however, actually suggests that Homestead Road was open and visible at the time she acquired the property. When asked during cross-examination if any kind of roadway existed where Homestead Roadway was now located, Hevner answered that "[t]here was a couple of tire tracks." Hevner did explain later, during re-direct examination, that the tire tracks "could have been made by me." Nevertheless, Hevner's testimony regarding the roadway is, at best, a mere denial of its existence. Mere denials will not prevent an order for summary judgment. *See Bruner*, 272 Mont. at 264, 900 P.2d at 903.

¶25 Hevner also notes that neither the Certificate of Survey attached to her deed nor the Declaration show Homestead Road as laying across her property. She further observes that she was unable to find any other maps or records that depict Homestead Road. These failures to indicate Homestead Road, according to Hevner, prove that the road did not exist when she purchased the property.

¶26 Ponderosa acknowledges that the Declaration did not show Homestead Road, but notes that the document was designed to establish which lands the existing easements burdened or benefitted. The Declaration was not designed to, and did not, list any individual easements. Instead, it simply noted that Ponderosa had not yet determined the location of the easements.

8

¶27 Where, as here, an easement is reserved without designating a location, and a road exists at the time of the reservation, then a court will treat the road as the easement that the parties contemplated. *See Eureka Land Co. v. Watts* (Va. 1916), 89 S.E. 968, 969. "[P]arties are presumed to contract with reference to the condition of the property at the time of the sale, provided the marks are open and visible." *Godfrey v. Pilon* (1974), 165 Mont. 439, 445, 529 P.2d 1372, 1375 (citing *Pioneer Mining Co. v. Bannack Gold Mining Co.* (1921), 60 Mont. 254, 263, 198 P. 748, 751. The key inquiry, therefore, is whether a passageway, even if only a couple of tire tracks, was open and visible. To this end, Hevner provided no proof that Homestead Road was not open and visible.

¶28 Hevner argues that the court should allow her to cross-examine Ponderosa's affiants, particularly Center. While we agree that summary judgment is improper where the credibility of an affiant may be crucial to a decision of material fact, this is not such an instance. The aerial photos, of which the court took judicial notice, shows Homestead Road on Hevner's property both before and after she purchased the lot. Such evidence is not susceptible to cross-examination.

¶29 For these reasons, we conclude that the aerial photos established the absence of a genuine issue of material fact regarding the existence of Homestead Road in its present location prior to the time she purchased her property. Furthermore, her mere denials are insufficient to meet her burden of coming forward

9

with evidence to establish that a genuine issue of material fact exists.

ISSUE TWO

¶30  Did the District Court err in awarding fees and costs under Rule 11 and § 37-61-421, MCA?

¶31  Rule 11, M.R.Civ.P., requires that an attorney sign every pleading, motion or other paper he or she submits.  The signature "constitutes a certificate by the signer . . . that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact."  Rule 11, M.R.Civ.P.  If an attorney fails to abide by this rule, the court "shall impose . . . an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses . . . including a reasonable attorney's fee."  We give a district court broad discretion to decide whether the factual circumstances of a particular case amount to frivolous or abusive litigation tactics.  *See Friends of the Wild Swan v. Department of Natural Resources & Conservation*, 2000 MT 209, ¶ 58, 301 Mont. 1, ¶ 58, 6 P.3d 972, ¶ 58.

¶32  The District Court found that Hevner's contention that Homestead Road did not exist in 1985 was not well grounded in fact.  According to the court, the aerial photographs clearly showed that Homestead Road existed in "exactly the same location in 1979 where it exists today."  The court thus found that Hevner's arguments to the contrary amounted to "'unreasonably and vexatiously'

10

multiplying the proceedings." It therefore awarded fees and costs to Ponderosa under Rule 11.

¶33 We conclude that these findings are not clearly erroneous and that the District Court's conclusion that these facts constitute a Rule 11 violation is not an abuse of discretion.

ISSUE THREE

¶34 Should this Court award Ponderosa Pines Ranch, Inc., attorney's fees under Rule 32, M.R.App.P?

¶35 We may award damages that we deem proper when an appeal is "taken without substantial or reasonable grounds." Rule 32, M.R.App.P.; *see also Grenz v. Fire & Cas. of Conn.*, 2001 MT 8, ¶ 18, 304 Mont. 83, ¶ 18, 18 P.3d 994, ¶ 18. The District Court concluded that Hevner's arguments concerning Homestead Road were not well grounded in fact. She now makes the same arguments in the present appeal despite photographs to the contrary.

¶36 We therefore award Ponderosa reasonable attorney's fees and costs associated with this appeal and remand for a determination of the amount.

¶37 Affirmed and remanded.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ TERRY N. TRIEWEILER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

11