DA 12-0707

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 298

YORLUM PROPERTIES, LTD.,

        Plaintiff and Appellee,

    v.

LINCOLN COUNTY, a political subdivision,
and WILLIAM and JANET BIGGERSTAFF,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DV 11-74
Honorable James B. Wheelis, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

            Clifton W. Hayden; Hedman, Hileman & LaCosta, PLLP; Whitefish,
Montana (for William and Janet Biggerstaff)

            Bernard G. Cassidy; Lincoln County Attorney; Libby, Montana
(for Lincoln County)

        For Appellee:

            Amy N. Guth; Attorney at Law; Libby, Montana

                          Submitted on Briefs:  July 24, 2013
                                      Decided:  October 15, 2013

Filed:

                                  _____
                                           Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     Carol Miller owned two adjacent parcels of real property in Lincoln County near Eureka, Montana. In March 2005, she conveyed one of the parcels to William and Janet Biggerstaff (the Biggerstaffs). Miller purported in the conveyance to reserve an easement over the Biggerstaffs' parcel for the benefit of Miller's retained parcel. In August 2006, Miller conveyed her retained parcel to Yorlum Properties Ltd. (Yorlum).

¶2     Thereafter, a dispute arose among Yorlum, the Biggerstaffs, and Lincoln County concerning the validity of the reserved easement. Yorlum commenced this action in the Nineteenth Judicial District Court, Lincoln County, seeking to quiet title to its property and access rights. The District Court granted summary judgment to Yorlum, and both the Biggerstaffs and Lincoln County now appeal.

¶3     We address three issues:

    1.  Whether the easement over the Biggerstaffs' parcel is valid.

    2.  Whether Miller lacked title to convey to Yorlum.

    3.  Whether Yorlum's complaint is barred by equitable principles.

We conclude that Yorlum is entitled to summary judgment on each of these issues, and we accordingly affirm the District Court's decision.

## BACKGROUND

¶4     Miller's property at issue in this case initially consisted of a 5.534-acre parcel designated "Lot 5" in the Dukes Vista Ridge subdivision, plus an adjacent 35.746-acre parcel north of Lot 5. Access to Lot 5 is provided over Dukes Vista Drive (a cul-de-sac). In 2004, Miller proposed a boundary adjustment to combine her two parcels into one

41.28-acre parcel, designated "Lot 5A." Lincoln County approved this boundary adjustment on January 10, 2005, as depicted on Amended Plat No. 6576. This plat is shown here, with the boundary of Lot 5A bolded:[1]



¶5 Miller next proposed to divide Lot 5A into two parcels. The northerly parcel, "Lot 5-B," would be 20.26 acres, and the southerly parcel, "Lot 5-A-1," would be 21.00 acres. This division is depicted on Amended Plat No. 6588. The plat, shown below, also

---

[1] The diagrams contained in this Opinion are part of the record in this case.

depicts a "30' private easement" running northerly through the middle of Lot 5-A-1 from the terminus of Dukes Vista Drive to the southern boundary of Lot 5-B.



¶6     The Lincoln County Planning Department received objections from neighboring landowners regarding Miller's proposed division of Lot 5A. The landowners claimed that the Dukes Vista Ridge subdivision covenants prohibited further subdivision of any

4

lot. They also claimed that the covenants prohibited access to any further added land using the subdivision's private roads. In this regard, the final plat of the Dukes Vista Ridge subdivision (Plat No. 5846, recorded March 26, 1997) indicates that Dukes Vista Drive and Linda Vista Drive (with which Dukes Vista Drive intersects to the south) are both 60-foot-wide "private" roads.

¶7 Despite the landowners' objections, the Lincoln County Board of Commissioners granted preliminary plat approval on February 2, 2005. As a condition of final approval, Miller was expected to resolve the access dispute with her neighbors; however, although Miller contacted several of the landowners, no agreement was reached. Nevertheless, the Board of Commissioners granted final plat approval on February 15, 2005. Amended Plat No. 6588 was recorded that same day. Two weeks later, Miller sold Lot 5-A-1 to the Biggerstaffs by a warranty deed dated March 1, 2005, and recorded March 2, 2005. The deed describes the property being conveyed as "Lot 5-A-1 of the Amended Plat of Dukes Vista Ridge Lot 5A, according to the plat thereof on file in the office of the Clerk and Recorder, Lincoln County, Montana. Plat #6588."

¶8 None of the neighboring landowners appealed, pursuant to § 76-3-625, MCA, from the Board's preliminary approval or final approval of Amended Plat No. 6588. Nor did any of the landowners sue to enforce the subdivision covenants. A number of the landowners, however, appeared at the Board's regular session on April 20, 2005, and reasserted their objections to the division of Lot 5A into two parcels. They claimed that Miller had "manipulated" the law and had employed "tactics" designed to "get[ ] around the legalities of our Covenants." They asked the Board to return Miller's property to a

5

single 41-acre parcel, or to remove Lot 5-B from the Dukes Vista Ridge subdivision and eliminate the easement over Lot 5-A-1.

¶9 On August 24, 2005, the Board of Commissioners executed a document which purports to invalidate the easement over Lot 5-A-1. The document was recorded with the Lincoln County Clerk and Recorder that same day. It states:

**NOTICE OF NO AUTHORIZED ROAD ACCESS**

Lincoln County hereby asserts that there is NO AUTHORIZED ROAD ACCESS for use of Linda Vista Drive nor access across Lot 5-A-1 for the benefit of Lot 5-B of the Amended Plat of Dukes Vista Ridge located in the NE1/4 of Section 14, Twp. 36 N., R. 28 W., P.M.M., all as shown on Amended Plat 6588, Lincoln County records.

No agreement between the original developer of the amended plat and landowners within the Plat of Dukes Vista Drive could be reached for use of Linda Vista Drive for access to Lot 5-B. This was a condition of the approval of the Amended Plat of Dukes Vista Ridge, Amended Plat No. 6588.

¶10 Yorlum acquired Lot 5-B from Miller on August 15, 2006. The following year, Yorlum notified the Biggerstaffs that a surveyor would be staking off the easement over Lot 5-A-1 and that a roadway would then be constructed to Lot 5-B. The Biggerstaffs responded that "no easement of any kind crosses Lot 5-A-1 for the benefit of Lot 5-B." Additionally, a spokesperson for the property owners in Dukes Vista Ridge subdivision sent Yorlum a letter stating that subdivision roads could not be used to access Lot 5-B. Yorlum attempted to resolve this issue with the landowners, but was not successful.

¶11 On March 21, 2011, Yorlum filed the instant action under Title 70, chapter 28, part 1, MCA, seeking a determination that it "is the owner in fee simple of property described in Amended Plat 6588" and "is entitled to subdivision access as described in

6

Amended Plat 6588." The Biggerstaffs and Lincoln County filed answers, and the parties subsequently filed cross-motions for summary judgment. The District Court determined that the documents of conveyance from Miller to the Biggerstaffs created an easement over Lot 5-A-1 as depicted and labeled on Amended Plat No. 6588. The District Court further ruled that once the Board of Commissioners granted final plat approval, the Board had no statutory authority to then record a "Notice of No Authorized Road Access." The District Court noted that if Miller or her surveyor in fact misrepresented the legal access in Amended Plat No. 6588, then Lincoln County and any affected landowners could have pursued available remedies under the Montana Subdivision and Platting Act (Title 76, chapter 3, MCA), none of which included placing a cloud over Yorlum's easement in the form of a Notice of No Authorized Road Access. Finally, the District Court rejected the Biggerstaffs' claim that Yorlum should be equitably precluded from legal access to its lot. The court reasoned that Yorlum took whatever title Miller could lawfully convey and that any awareness Yorlum may have had of the Notice of No Authorized Road Access was not salient to the validity of the Notice or the easement.

## STANDARDS OF REVIEW

¶12     This Court reviews a district court's ruling on a motion for summary judgment de novo, applying the criteria set forth in M. R. Civ. P. 56. *Gordon v. Kuzara*, 2012 MT 206, ¶ 13, 366 Mont. 243, 286 P.3d 895. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3). Where the material facts are

7

undisputed—as is the case here—the district court must simply identify the applicable law, apply it to the uncontroverted facts, and determine who prevails. *Corp. Air v. Edwards Jet Ctr.*, 2008 MT 283, ¶ 28, 345 Mont. 336, 190 P.3d 1111. The determination as to whether a party is entitled to judgment on the facts is a conclusion of law, which this Court reviews to determine whether it is correct. *Gordon*, ¶ 13.

## DISCUSSION

¶13 ***Issue 1. Whether the easement over the Biggerstaffs' parcel is valid.***

¶14 Yorlum claims it has an easement by reservation over the Biggerstaffs' property. An easement arises by reservation where a landowner conveys part of his or her property to another but reserves an easement over the transferred property in favor of the landowner's retained property. *Blazer v. Wall*, 2008 MT 145, ¶ 27, 343 Mont. 173, 183 P.3d 84. A reserved easement may be created only when the dominant and servient estates are split from single ownership. *Blazer*, ¶¶ 38, 44; *Ruana v. Grigonis*, 275 Mont. 441, 448-51, 913 P.2d 1247, 1252-54 (1996). Hence, the easement over Lot 5-A-1 was reserved, if at all, when Lot 5A was split from single ownership into two separately owned parcels. That occurred on March 1, 2005, when Miller conveyed Lot 5-A-1 to the Biggerstaffs and retained Lot 5-B for herself. Thus, the Miller-Biggerstaff transaction is decisive. *Blazer*, ¶ 44.

¶15 The Miller-Biggerstaff deed contains no language expressly reserving an easement over the conveyed property—such as, "Grantor reserves a 30-foot-wide private access easement over Lot 5-A-1 for the benefit Lot 5-B." *See Davis v. Hall*, 2012 MT 125, ¶ 19, 365 Mont. 216, 280 P.3d 261. The deed does state (in the Property Description) that the

conveyance of Lot 5-A-1 is "SUBJECT TO easements on the recorded plat #5846, #6576 and #6588, records of Lincoln County, Montana." However, this Court has held that "subject to" language in a document of conveyance does not create an easement. *Wild River Adventures, Inc. v. Bd. of Trustees*, 248 Mont. 397, 401, 812 P.2d 344, 346-47 (1991); *Bache v. Owens*, 267 Mont. 279, 286, 883 P.2d 817, 821 (1994); *Ruana*, 275 Mont. at 449, 913 P.2d at 1252-53; *Blazer*, ¶ 28. Consequently, given the absence of any language in the deed expressly reserving the claimed easement over Lot 5-A-1, Yorlum relies instead on this Court's easement-by-reference doctrine.

¶16    In a series of cases, this Court has recognized that an express easement may be created by referring in an instrument of conveyance to a recorded plat or certificate of survey on which the easement is adequately described. *See Bache*, 267 Mont. at 283-86, 883 P.2d at 820-22; *Halverson v. Turner*, 268 Mont. 168, 172-74, 885 P.2d 1285, 1288-89 (1994); *Ruana*, 275 Mont. at 449, 913 P.2d at 1253; *Tungsten Holdings, Inc. v. Parker*, 282 Mont. 387, 390, 938 P.2d 641, 642 (1997); *Pearson v. Virginia City Ranches Assn.*, 2000 MT 12, ¶¶ 19-20, 26, 298 Mont. 52, 993 P.2d 688; *Blazer*, ¶¶ 30-43; *Conway v. Miller*, 2010 MT 103, ¶ 19, 356 Mont. 231, 232 P.3d 390; *Davis*, ¶ 19; *see also Broadwater Dev., LLC v. Nelson*, 2009 MT 317, ¶ 26, 352 Mont. 401, 219 P.3d 492. "When the deed itself contains no language reserving (or granting) an easement, our easement-by-reference doctrine contemplates that an explicit reference in the deed to a plat or certificate of survey on which an easement is clearly depicted and adequately described is sufficient to establish the easement." *Blazer*, ¶ 41.

¶17    As noted, the Miller-Biggerstaff deed describes the property being conveyed as "Lot 5-A-1 of the Amended Plat of Dukes Vista Ridge Lot 5A, according to the plat thereof on file in the office of the Clerk and Recorder, Lincoln County, Montana. Plat #6588." This is sufficient to incorporate the plat into the deed. *Blazer*, ¶ 45. Accordingly, the dispositive question is whether the easement shown on Amended Plat No. 6588 is "adequately described." *Blazer*, ¶¶ 41, 45; *Broadwater Dev.*, ¶ 38.

¶18    We have noted two requirements for adequately describing an easement: first, the identities of the dominant and servient tenements must be "ascertainable with reasonable certainty" from the transaction documents; second, the transaction documents must give the owner of the property being burdened by the servitude "knowledge of its use or its necessity." *Davis*, ¶¶ 20, 24-25; *Blazer*, ¶¶ 36, 51, 54, 56-57; *Broadwater Dev.*, ¶ 38. The Biggerstaffs argue that, in order to satisfy these requirements, the precise location of the easement on the ground must be provided.

¶19    This is a question we have not previously addressed in our easement-by-reference cases. In *Bache*, *Halverson*, and *Blazer*, the certificates of survey showed a 30-foot-wide easement along the boundary of the servient estate. *Bache*, 267 Mont. at 282, 291, 883 P.2d at 819, 823; *Halverson*, 268 Mont. at 170-71, 885 P.2d at 1287; *Blazer*, ¶¶ 2-4. There was no dispute about where the alleged easement was situated. Likewise, the location of the building restriction line at issue in *Conway* was identified by corners and measurements on the face of the plat. *Conway*, ¶ 2. In *Tungsten Holdings*, the alleged easement was a meandering strip of land 40 feet wide, approximately 2,700 feet long, and identified as "lot 34"; however, this parcel served as a boundary between property to the

north and property to the south of lot 34, and thus its precise location was not in question. 282 Mont. at 388-89, 938 P.2d at 641-42. Finally, in *Ruana*, *Pearson*, and *Davis*, there was no dispute about the easement's location; the only question was its validity. *Ruana*, 275 Mont. at 444-45, 450, 913 P.2d at 1249-50, 1253; *Pearson*, ¶ 17; *Davis*, ¶¶ 3-4.

¶20 In contrast, the precise location of the easement on Amended Plat No. 6588 is not specified—for example, with a metes-and-bounds description.[2] For reader convenience, an excerpt of the plat is provided here:



¶21 The District Court, while it did "not necessarily disagree with the Biggerstaffs' claims that a metes and bounds description would be helpful," nevertheless concluded that the lack of such a description does not invalidate the easement. In the Biggerstaffs' view, this was error. They argue that a depiction is inadequate—and, thus, the purported

---

[2] Metes and bounds: "The territorial limits of real property as measured by distances and angles from designated landmarks and in relation to adjoining properties." *Black's Law Dictionary* 1080 (Bryan A. Garner ed., 9th ed., Thomson Reuters 2009).

easement is void—if no courses, bearings, distances, angles, radiuses, centerline location, or other similar information is provided. They characterize this information as essential to locate the easement and to determine the burden on the servient estate.

¶22 It is true that a land description is necessary in an instrument conveying title so that the extent of the claim to the property may be determined. *Blazer*, ¶¶ 51, 70; *Halverson*, 268 Mont. at 172, 885 P.2d at 1288. However, contrary to the Biggerstaffs' argument, failing to fix an easement's precise location in the transaction documents does not render the easement void as a matter of law. In *Anderson v. Stokes*, 2007 MT 166, 338 Mont. 118, 163 P.3d 1273, for example, the owners of a 160-acre parcel granted Donald Treloar an easement to erect, construct, operate, and maintain radio towers. The instrument of conveyance recited that Treloar desired to erect the radio towers on "certain portions" of the 160-acre parcel, but the exact location was "impossible to determine" at that time. *Anderson*, ¶ 4. The grantors thus gave Treloar "the right to select the place or places at which the above described facilities shall be erected and maintained." *Anderson*, ¶ 4. Treloar then selected a site within the 160 acres and built two radio towers along with a transmission line, wires, conduits, and ground radial antennas. *Anderson*, ¶ 5. We held that the selection of a site and the construction of towers on that site fixed the location of the easement. *Anderson*, ¶¶ 37-47.

¶23 Other cases recognize, at least implicitly, that the failure to specify an easement's precise location in the documents of conveyance is not necessarily fatal to the easement's validity. *See e.g. Ponderosa Pines Ranch, Inc. v. Hevner*, 2002 MT 184, ¶ 27, 311 Mont. 82, 53 P.3d 381 ("Where, as here, an easement is reserved without designating a location,

12

and a road exists at the time of the reservation, then a court will treat the road as the easement that the parties contemplated."); *Wills Cattle Co. v. Shaw*, 2007 MT 191, ¶ 26, 338 Mont. 351, 167 P.3d 397 ("If a document fails to adequately fix the location of an easement, a court may ascertain the location by use."); *Larson v. Amundson*, 414 N.W.2d 413, 417 (Minn. App. 1987) (where the location of an easement is indefinite, the grantor or the grantee may designate the roadway in a reasonably suitable location); *Evans v. Bd. of Co. Commrs.*, 2005 UT 74, ¶¶ 12-14, 123 P.3d 432 (although certainly desirable in most instances, language fixing the location of an easement is not always necessary when other terms of the easement safeguard the servient estate from the risk that its burden may be greater than that for which it bargained); *Smith v. King*, 620 P.2d 542, 543 (Wash. App. Div. 1 1980) (a right-of-way not definitely located in the deed may be located by the parties by parol agreement anywhere within the boundaries of the land over which the right is granted; the location of an easement may be established also by implication through customary use); *Brumbaugh v. Mikelson Land Co.*, 2008 WY 66, ¶ 21, 185 P.3d 695 (where the location of an express easement is not stated, courts consider certain factors in locating the easement); *see also* Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land* §§ 7:4 to 7:6, 7-5 to 7-17 (Thomson Reuters 2013) (discussing this subject).

¶24     Of course, the foregoing cases are factually distinguishable from the present case in the respect that each case involved an easement that was created using express language in a deed, covenant, or declaration, but whose location was not fixed.  The courts did not find the easements void for lack of a specified location; they instead

applied various approaches for determining the easement's location. The present case, in contrast, involves an easement that was not created using express language of grant or reservation in a deed; it instead was created solely by means of a depiction on a plat referenced in the deed.

¶25 Nevertheless, whether an easement is created using express language (e.g., *Broadwater Dev.*), or by merely depicting it on a plat or certificate of survey referenced in the deed (e.g., *Bache*, *Halverson*, *Pearson*), or through some combination of these two methods (e.g., *Davis*), the essential requirement in all three situations is the same with regard to the description: an individual examining the transaction documents must be able to ascertain, with reasonable certainty, the intended dominant and servient tenements and the easement's use or necessity. *Blazer*, ¶ 75; *Broadwater Dev.*, ¶¶ 26, 38; *Davis*, ¶¶ 24-25. The purpose of requiring this information is to ensure that the owner of the servient estate can determine the extent of the burden on the servient land. It also enables the dominant and servient landowners to ensure that the terms of the easement are being honored, *see Evans*, ¶ 12, and it gives notice of the burden to prospective purchasers of the servient estate under the recording statutes, *see Blazer*, ¶¶ 73-74. While there may be instances where the depicted easement's location is so vague and uncertain as to render it impossible to ascertain, with reasonable certainty, the easement's burden on the servient estate, we do not agree with the Biggerstaffs' argument that the failure to provide a metes-and-bounds description is necessarily fatal in every case.

¶26 Here, Amended Plat No. 6588 provides a metes-and-bounds description (with angles, distances, and corners) of the boundaries of Lot 5-A-1 and Lot 5-B. The depicted

14

easement begins at the terminus of Dukes Vista Drive and is aligned with the easterly 30 feet of that road. (Dukes Vista Drive is 60 feet wide.) The easement proceeds a short distance north, then veers to the northeast, and gradually returns to a northerly direction, ultimately terminating at the southernmost boundary of Lot 5-B. The easement runs through the middle of Lot 5-A-1, and its course can be fairly approximated using the Graphic Scale provided on the plat and measuring from the boundaries of Lot 5-A-1 and Lot 5-B. The easement is labeled 30 feet wide and "private." The plat thus imparts sufficient information for an individual to ascertain, with reasonable certainty, the dominant tenement (Lot 5-B), the servient tenement (Lot 5-A-1), the easement's approximate course across Lot 5-A-1, and the easement's use or necessity (to provide a means of private access to Lot 5-B). The easement's burden on the servient estate is reasonably clear to any purchaser of Lot 5-A-1.

¶27 Based on this analysis, we hold that the Miller-Biggerstaff transaction documents created a valid easement over Lot 5-A-1 for the benefit of Lot 5-B.

¶28 ***Issue 2. Whether Miller lacked title to convey to Yorlum.***

¶29 Lincoln County and the Biggerstaffs advance two separate but related arguments concerning the validity of Miller's sale of Lot 5-B to Yorlum. We reject these arguments for the reasons which follow.

¶30 First, Lincoln County cites § 76-3-608(3)(d), MCA, which states: "A subdivision proposal must undergo review for . . . the provision of legal and physical access to each parcel within the proposed subdivision . . . ." The County opines that because Miller failed to secure legal access to her property using the Dukes Vista Ridge subdivision

15

roads, the Board's final approval of Amended Plat No. 6588 was "mistaken or negligent," "in violation of the Montana Subdivision and Platting Act," and "taken without authority." In this regard, the County cites a 1980 opinion of the Montana Attorney General (Mont. Atty. Gen. Op. 38-106, 1980 Mont. AG LEXIS 13 (Sept. 12, 1980)), for the proposition that "[t]he board's illegal grant of final approval does not legitimize Miller's transfer of the lot to Yorlum."

¶31   As an initial matter, there is conflicting evidence in the record underlying the County's assertion that Miller had no right to use the subdivision roads to access her property. As explained, the County permitted Miller to add a 35.746-acre parcel outside the subdivision to her 5.534-acre parcel (Lot 5) inside the subdivision, which resulted in a 41.28-acre parcel designated Lot 5A. The County then permitted Miller to divide Lot 5A into two parcels, one 21 acres and the other approximately 20 acres. During this process, neighboring landowners and the developer of Dukes Vista Ridge told the County that the subdivision covenants barred access over subdivision roads "to any further added land." In other words, "none of the property added to original Lot 5 has any easement rights on the [subdivision roads]." This would mean that the subdivision roads cannot be used to access Yorlum's Lot 5-B, as well as the bulk of the Biggerstaffs' Lot 5-A-1. At the same time, however, the landowners took the seemingly inconsistent position that subdivision roads could be used to access Lot 5A. At the Board's April 20, 2005 meeting, the Road Users Association and Landowners of Dukes Vista Ridge represented that restoring Miller's land to its "originally platted and recorded 41 acres [i.e., Lot 5A] . . . would easily remedy this situation." They expressed no objections to accessing the 41 acres, as

a single parcel, using subdivision roads. As a result, the evidence in the record regarding Miller's right to use subdivision roads to access the 35.746 acres she appended to original Lot 5 is, at best, open to dispute.

¶32 But even assuming that the subdivision roads cannot be used to access Miller's 35.746 acres, this fact does not render the Board's grant of final plat approval "illegal" and "without authority" as the County claims.[3] In the Attorney General opinion on which the County relies, the Attorney General concluded that because the governing body lacked statutory authority to review and approve the certificate of survey at issue, any illegalities in the underlying land transfer could not be cured by the governing body's unauthorized approval of that certificate of survey. 1980 Mont. AG LEXIS 13 at **10-11. That is not the situation in the present case. Here, the governing body did have statutory authority to review and approve the plat at issue, *see* Title 76, chapter 3, part 6, MCA, and the Board of Commissioners in fact reviewed and granted final approval to Amended Plat No. 6588. Thus, this is not a case where the landowner sold property following an unauthorized act of the governing body; rather, it is a case where the landowner sold property following an authorized act of the governing body, but the governing body then found that not all conditions of final plat approval had been met. In such situations, § 76-3-301(3), MCA, states: "If transfers not in accordance with [the Montana Subdivision and Platting Act] are made, the county attorney shall commence action to enjoin further sales or transfers and compel compliance with all provisions of

---

[3] Notably, under the County's argument, Miller's failure to secure legal access to her property would invalidate not only the Miller-Yorlum sale, but also the Miller-Biggerstaff sale. The Biggerstaffs do not express any support for this argument in their separate appellate briefs.

[the Act]."[4]  Here, the Board granted final plat approval on February 15, 2005; Miller sold Lot 5-A-1 to the Biggerstaffs on March 1, 2005; the landowners raised the access issue in their objections to the Board on April 20, 2005; and Miller sold Lot 5-B to Yorlum on August 15, 2006.  At no point following Miller's sale to the Biggerstaffs did the Lincoln County Attorney commence an action "to enjoin further sales or transfers and compel compliance with" the Act.  Section 76-3-301(3), MCA.  For these reasons, the County's argument that the Miller-Yorlum transaction was void is without merit.

¶33   The Biggerstaffs present a slightly different theory challenging the Miller-Yorlum transaction.  They point to a letter from Miller to the Board of Commissioners dated February 11, 2005, four days before the Board granted final plat approval.  The body of this letter states, in its entirety:  "Lot No. 5-B will not be transferred until the access agreement through Linda Vista Drive is completed."  The letter was recorded on February 15, 2005.  The Biggerstaffs claim that since no "access agreement" was ever reached between Miller and the landowners, "Miller had no title to be lawfully conveyed to Yorlum."  Yet, the Biggerstaffs fail to cite any legal authority for the proposition that an ostensible promise not to convey land until access is established means that the promisor lacks "title" to the land or that the conveyance is void as a matter of law.  As discussed, the Montana Subdivision and Platting Act provides remedies for such situations, including injunctive relief and criminal prosecution.  *See* §§ 76-3-105, -301(3),

---

[4] The violator might also be subject to prosecution under § 76-3-105, MCA, which states: "Any person who violates any provision of this chapter or any local regulations adopted pursuant thereto shall be guilty of a misdemeanor and punishable by a fine of not less than $100 or more than $500 or by imprisonment in a county jail for not more than 3 months or by both fine and imprisonment."

MCA. These remedies were not pursued here. Nor did any aggrieved landowner appeal the Board's decision pursuant to § 76-3-625, MCA, or file suit to enforce the subdivision covenants. As a result, the Biggerstaffs' arguments in this regard ring hollow.

¶34 The Biggerstaffs and Lincoln County have failed to establish any basis for concluding that Miller lacked title to convey to Yorlum.

¶35 ***Issue 3. Whether Yorlum's complaint is barred by equitable principles.***

¶36 The Biggerstaffs and Lincoln County contend that Yorlum's complaint should be dismissed under equitable principles. The basis for this assertion is that Yorlum had notice of adverse claims against its right of access when it purchased Lot 5-B. However, the existence of adverse claims is a reason for bringing a quiet title action, not a reason for precluding it. *See* § 70-28-101, MCA.[5] As Yorlum points out, what it sought in this lawsuit is a determination of its property interests under Amended Plat No. 6588. This included determinations of whether it has an easement over the Biggerstaffs' lot and whether the County had authority to record the Notice of No Authorized Road Access. Yorlum did not seek a decree concerning its use of subdivision roads not shown on the plat, and any dispute concerning the use of such roads is beyond the scope of Yorlum's requested relief.[6] Amended Plat No. 6588 clearly depicts and adequately describes an

---

[5] "An action may be brought and prosecuted to final decree, judgment, or order by any person or persons, whether in actual possession or not, claiming title to real estate against any person or persons, both known and unknown, who claim or may claim any right, title, estate, or interest therein or lien or encumbrance thereon adverse to plaintiff's ownership or any cloud upon plaintiff's title thereto, whether such claim or possible claim be present or contingent, including any claim or possible claim of dower, inchoate or accrued, for the purpose of determining such claim or possible claim and quieting the title to said real estate."

[6] For this reason, the Biggerstaffs' separate argument that Yorlum failed to join necessary parties is without merit.

easement over Lot 5-A-1 for the benefit of Lot 5-B. The fact that the Biggerstaffs and the County did not believe this easement was valid—assuming Yorlum was aware of this fact when it purchased Lot 5-B from Miller—does not constitute an equitable basis for precluding Yorlum's complaint.[7]

**CONCLUSION**

¶37 The District Court correctly granted summary judgment to Yorlum and denied summary judgment to the Biggerstaffs and Lincoln County.

¶38 Affirmed.

/S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ BETH BAKER

---

[7] Regarding the Board's August 24, 2005 "Notice of No Authorized Road Access," the County did not challenge, in its opening brief on appeal, the District Court's conclusion that the Board lacked authority to record the Notice. The County touches on this issue in a two-sentence paragraph near the end of its reply brief; however, arguments and issues first raised in a reply brief are not properly before this Court and will not be considered on appeal. *State v. Murphy*, 2003 MT 276, ¶ 14, 317 Mont. 500, 78 P.3d 843.