FILED

07/13/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0582

DA 20-0582

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 177

WILKINSON, LLC, and JACK COUCH,

        Plaintiffs and Appellants,

    v.

SCOTT and CINDY ERLER, LLP, SCOTT ERLER,
individually, and DOES 1-10,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Third Judicial District,
                In and For the County of Granite, Cause No. DV-20-18
                Honorable Ray Dayton, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Rob Cameron, Scott M. Svee, Nathan Bilyeu, Jackson, Murdo & Grant,
                P.C., Helena, Montana

        For Appellees:

                David J. Steele, II, Timothy D. Geiszler, Layla A. Turman, Geiszler Steele,
                PC, Missoula, Montana

                Submitted on Briefs: June 9, 2021

                      Decided: July 13, 2021

Filed:

                _____
                          Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Wilkinson, LLC, and Jack Couch (collectively Wilkinson) appeal the October 2, 2020 order from the Third Judicial District Court, Granite County, holding the Secret Gulch Road Easement was an easement in gross, vacating Wilkinson's temporary restraining order, denying Wilkinson's injunctive relief, and awarding Scott and Cindy Erler, LLP (Erler), costs and attorney's fees. We reverse.

¶2 Wilkinson presents the following issue for review:

*Whether the District Court erred in determining the Secret Gulch Road Easement was an easement in gross rather than appurtenant.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 In 1988, Valley Mining Company (Valley Mining) owned a tract of land in Granite County, northeast of Drummond, which was platted and referenced as Government Lot 3. In October 1988, Valley Mining granted and conveyed the Secret Gulch Road Easement (Easement Document) across Government Lot 3 to Champion International Corporation (Champion), as provided below:

> [R]elease and quitclaim unto *the Grantee, and its successors,* an easement and right of way 66 feet in width, being 38 feet on each side of the centerline with such additional width as is required to accommodate needed cuts and fills, for road purposes for a road to be constructed, reconstructed, improved, used, operated, patrolled and maintained, over, upon and across the following-described property located in Granite County, Montana to-wit:

> Secret Gulch Road, beginning at its junction with the Bear Gulch Road in Government lot 3, Section 22, T12N, R14W, P.M.M. and crossing lands of the Grantor in Government lot 3, of Section 22, and ending at a point on the west line of Government lot 3, Section 23, T12N, R14W, as shown on the attached plat marked Exhibit A-1 and by this reference made a part hereof.

2

> This easement is non-assignable and is to be used by Grantee or its successors only in connection with the *utilization of Grantee's adjacent properties*, including timber harvesting, forest management and other silvicultural activities conducted on said properties.

(Emphasis added.)  The attached plat depicts the Secret Gulch Road Easement:



*Figure 1: Wilkinson's Exhibit A-1, which was attached to the Easement Document.*

The Easement Document was duly recorded with the Granite County Clerk and Recorder's Office on November 1, 1988.

¶4      In 1993, Champion granted, sold, and conveyed to Plum Creek Timber Company (Plum Creek), and "to its successors and assigns, FOREVER . . . ," Government Lot 7 as

described in Exhibit "A."[1]  In 2002, Erler acquired Government Lot 3 of Township 12 North, Range 14 West, by warranty deed, expressly subject to any existing easements.  The deed provided:

> TO HAVE AND TO HOLD the said premises, *with their appurtenances* unto the said Grantee and to the Grantee's heirs and assigns forever.  And the said Grantor does hereby covenant to and with the said Grantee, that the Grantor is the owner in fee simple of said premises; that said premises are free from all encumbrances except current years taxes, levies, and assessments, and except U.S. Patent reservations, restrictions, *easements of record, and easements visible upon the premises*, and that Grantor will warrant and defend the same from all lawful claims whatsoever.

(Emphasis added.)

¶5     In 2004, Plum Creek Timberlands, L.P., as successor to Plum Creek, granted and conveyed the real property to Stimson Lumber Company (Stimson) and "to its successors and assigns, FOREVER," by special warranty deed.  The deed included Government Lot 7 in Township 12 North, Range 14 West as indicated in the special warranty deed between Champion and Plum Creek and contained the identical description: "Section 22: Lot 7; NW 1/4 SW 1/4; W 1/2 NW 1/4."  Although the Stimson deed specifically described other easements conveyed within different townships and ranges, it contained a description regarding all other easements claimed by the Grantor, i.e., Plum Creek Timberlands.  Exhibit "C" of the Stimson deed stated:

> Grantor further assigns, conveys, transfers, and sets over to Grantee all of Grantor's rights, title and interest in, to and under any and all other rights-of-way, easements, use agreements and other access rights presently

---

[1] Exhibit "A" was a collection of documents that included the conveyance of Government Lot 7 from Champion to Plum Creek and numerous other property conveyances both within the township and in neighboring townships.

held or claimed by Grantor in Granite County, Montana, *which are appurtenant* and provide access to or otherwise benefit the real property described herein.

(Emphasis added.)

¶6 Finally, on June 15, 2020, Stimson conveyed, by special warranty deed, lands in Township 12 North, Range 14 West, including Government Lot 7 in Section 22. The deed contained the description regarding easements: "TO HAVE AND TO HOLD unto the Grantee, its successors and assigns forever, subject, however, to all easements, rights of way . . . ." Upon receiving the Secret Gulch Road Easement, Wilkinson, through its agent Jack Couch, began using it to cross Erler's property for construction of improvements on its adjacent Government Lot 7. Shortly after, Erler blocked the use of the Secret Gulch Road Easement by locking its headgate.

¶7 On August 7, 2020, Wilkinson filed suit with the District Court seeking a temporary restraining order against Erler. The District Court granted the temporary restraining order and set a hearing for August 27, 2020. Wilkinson filed a preliminary injunction order on September 4, 2020, which was denied by the District Court in its October 2, 2020 order holding the Secret Gulch Road Easement was in gross rather than appurtenant. The October 2, 2020 order additionally terminated the temporary restraining order and awarded costs, damages, and attorney's fees to Erler. The District Court held an emergency hearing on October 5, 2020, after both parties brought forth allegations of damages to the road and to headgates on each property. Following the emergency hearing, Wilkinson filed a

M. R. Civ. P. 54(b)(1) motion for entry of the October 2, 2020 order as a final order and certifying it for appeal. In December 2020, the District Court granted Wilkinson's motion.

## STANDARDS OF REVIEW

¶8 The interpretation of an easement is a question of law. *Mary J. Baker Revocable Trust v. Cenex Harvest States, Coops., Inc.*, 2007 MT 159, ¶¶ 18-19, 338 Mont. 41, 164 P.3d 851. The Court reviews a district court's conclusion of law de novo for correctness. *Blazer v. Wall*, 2008 MT 145, ¶ 22, 343 Mont. 173, 183 P.3d 84.

## DISCUSSION

¶9 "An easement is a nonpossessory interest in land—a right which one person has to use the land of another for a specific purpose or a servitude imposed as a burden upon the land." *Blazer*, ¶ 24. An easement may be "appurtenant" or "in gross." *Blazer*, ¶ 24. "An easement appurtenant is one that benefits a particular parcel of land . . . it serves the owner of that land and passes with the title to that land." *Blazer*, ¶ 24. "The benefited parcel is known as the 'dominant' tenement or estate, and the burdened parcel is termed the 'servient' tenement or estate." *Blazer*, ¶ 24. "An easement in gross benefits the holder of the easement personally . . . not in connection with his or her ownership or use of a specific parcel of land." *Blazer*, ¶ 24. With an easement in gross, "no dominant tenement exists and the easement right cannot pass with the title to any land." *Blazer*, ¶ 24. An easement cannot be created except by an instrument in writing, by operation of law, or by prescription. "We have recognized the creation of easements by express grant, reservation, exception, or covenant; by implication from necessity or a prior existing use; and by

6

prescription." *Blazer*, ¶ 26. "An easement may be expressly granted by the appropriate language in an instrument of conveyance, or by referring, in an instrument of conveyance, to a recorded plat or certificate of survey on which the easement is clearly depicted or adequately described." *Whitefish Congregation of Jehovah's Witnesses, Inc. v. Caltabiano*, 2019 MT 228, ¶ 26, 397 Mont. 284, 449 P.3d 812.

¶10    This Court has held:

> [T]he determination of whether an expressly created easement is appurtenant or in gross necessarily depends on other considerations—in particular, the intention of the parties as ascertained from the language of the instrument and aided, if necessary, by the situation of the properties involved, the objective circumstances existing at the time of execution, and the purpose to be accomplished by the easement.

*Broadwater Dev., L.L.C. v. Nelson*, 2009 MT 317, ¶ 34, 352 Mont. 401, 219 P.3d 492. "The fact that the easement benefits the owner of a particular tract, adds to the enjoyment of another parcel, or is of no value unless used in connection with particular land suggests appurtenance." *Broadwater Dev., L.L.C.*, ¶ 34. "[I]f the granting instrument does not specify whether the easement is appurtenant or in gross, the court generally begins with the presumption that it is appurtenant." *Broadwater Dev., L.C.C.*, ¶ 34. This Court has established two requirements for adequately describing an easement: "(1) identification of the dominant and servient tenements must be 'ascertainable with reasonable certainty' from the transaction documents, and (2) the transaction documents must give the owner of the property being burdened by the servitude 'knowledge of its use or necessity.'" *Caltabiano*, ¶ 26 (citing *Yorlum Props., Ltd. v. Lincoln County*, 2013 MT 298, ¶ 18, 372 Mont. 159, 311 P.3d 748).

7

¶11 The Easement Document creating the Secret Gulch Road Easement does not specify whether it is appurtenant or in gross. Thus, this Court must look to the nature of the dominant and servient estates as depicted in the Easement Document. Again, an easement that is appurtenant must render the dominant and servient estates ascertainable with reasonable certainty and give the owner of the property being burdened by the servitude knowledge of its use or necessity. *Caltabiano*, ¶ 26. It is undisputed that Erler owns the servient estate—Government Lot 3. Erler, however, challenges whether the dominant estate is ascertainable with reasonable certainty from the easement documents.

¶12 This Court has explained "that selling lots with reference to a map or plat may create an easement benefitting the purchasers." *Blazer*, ¶ 31 (citing *Benson v. Pyfer*, 240 Mont. 175, 783 P.2d 923 (1989)). "When land is sold with reference to a properly recorded plat, the plat becomes part of the instrument conveying the interest in the land." *Caltabiano*, ¶ 27. In *Caltabiano*, this Court evaluated a plat depicting two tracts, "A" and "B," both initially owned by a Jehovah's Witnesses Congregation. The plat depicted a road and utility easement providing access from a county road to both tracts. The Congregation sold Tract "B" to a third party, who eventually sold it to the Caltabianos. Tract "B" was situated between the county road and Tract "A," which was still owned by the Congregation. The Congregation used the easement over Tract "B" to access Tract "A." The Caltabianos argued the easement within the plat did not describe the dominant estate. We concluded "[t]he Easement is obvious from the plat diagram, it

8

contains a metes-and-bounds description of the dimensions; and it is clear from the plat that Tract B is the servient estate, and Tract A is the dominant estate." *Caltabiano*, ¶ 33.

¶13    Here, the plat depicts that the Secret Gulch Road Easement provides access from Bear Gulch Road, running east to west across Government Lot 3—Erler's property—to Wilkinson's adjacent property—Government Lot 7.  It is clear from the plat diagram, which contains a "metes-and-bounds description of the dimensions," that the Secret Gulch Road Easement burdens Government Lot 3 making it the servient estate.  It is also ascertainable with reasonable certainty that Government Lot 7 is the dominant estate that the Secret Gulch Road Easement benefits.

¶14    Even if the plat diagram does not specifically distinguish whether Government Lot 7 is the dominant estate, the written description contained in the Easement Document, and subsequent deeds, identify the Secret Gulch Road Easement with reasonable certainty. Again, the Easement Document provides:

> This easement is non-assignable and is to be used by Grantee or its successors only in connection with the *utilization of Grantee's adjacent properties*, including timber harvesting, forest management and other silvicultural activities conducted on said properties.

(Emphasis added.)    The Grantee in the Easement Document, Champion, conveyed Government Lot 3 and the Secret Gulch Road Easement to a successor who then conveyed it to Erler in 2002.  Champion also originally owned the adjacent Government Lot 7, which was eventually conveyed to Wilkinson in 2020.  As described in the Easement Document, the Secret Gulch Road Easement was to be used in connection with Champion's *adjacent properties*.  Champion, having conveyed the adjacent Government Lot 7 to

9

Plum Creek, who then conveyed it to Stimson, and then to Wilkinson, also conveyed the benefit of using the Secret Gulch Road Easement across Government Lot 3. Thus, the description contained in the Easement Document clearly depicts Government Lot 3 as the servient estate and adjacent properties—here, Government Lot 7—as the dominant estate. We conclude the dominant and servient estates are ascertainable with reasonable certainty from the Easement Document and the plat.

¶15 Erler asserts Wilkinson's argument fails because its use of extrinsic evidence should not be considered by this Court in evaluating whether the easement is appurtenant. "When the terms of an agreement have been reduced to writing by the parties, the writing is considered to contain all the necessary terms, and no evidence of terms of the agreement other than the contents of the writing should be considered." *Caltabiano*, ¶ 28. "However, if the terms of a contract are ambiguous—reasonably subject to two different meanings—or interpretation of the term requires resolving a question of fact regarding the intent, courts may allow the parties to introduce extrinsic evidence to prove intent of the parties." *Caltabiano*, ¶ 28. Specifically, Erler asserts Wilkinson's reference to "adjacent properties" in the Easement Document does not mean Government Lot 7 because it is plural. However, Erler's suggested narrow interpretation of Valley Mining's intent would likely defeat the purpose of the Secret Gulch Road Easement. By using the phrase "adjacent properties," the original Grantor, Valley Mining, was ensuring that Champion would be entitled to use the easement on all of its adjacent properties. Government Lot 7,

10

however separately conveyed to Wilkinson, is the only parcel at issue in this case and clearly benefits from the Secret Gulch Road Easement.

¶16 Erler also argues Wilkinson conflated the terms "successors," "successors-in-interest," and "assigns." However, a simple examination of the Easement Document and the subsequent deeds illustrate Wilkinson was conveyed the adjacent property with the right to utilize the Secret Gulch Road Easement. The Easement Document conveyed the Secret Gulch Road Easement, located across Government Lot 3, "to the Grantee [Champion], and its successors . . . ." The purpose of the conveyance was to grant access to the Secret Gulch Road Easement in connection with the utilization of Champion's adjacent properties, which includes Government Lot 7. In 1993, Champion then conveyed Government Lot 7 to Plum Creek and "its successors and assigns . . . ." In 2004, Plum Creek then conveyed Government Lot 7 to Stimson "and its successors and assigns. . . ." And finally, in 2020, Stimson conveyed Government Lot 7 to Wilkinson and "its successors and assigns forever . . . ." Nowhere in the conveyance documents does the term of art alternate; in fact, the language in the documents is clear that in acquiring Government Lot 7—the adjacent lot to Government Lot 3—Wilkinson is entitled to the benefit of the Secret Gulch Road Easement as a successor to the original Grantee, Champion. Furthermore, § 70-20-308, MCA, describes that:

> [A] transfer of real property passes all easements attached thereto and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred of the benefit thereof at the time when the transfer was agreed upon or completed.

11

Simplified, § 70-20-308, MCA, means that if the dominant estate is transferred in separate parcels to different entities, each grantee acquires a right to use easements appurtenant to the dominant estate, so long as there are no additional burdens to the servient estate. Thus, statutorily, Wilkinson as the successor to the dominant estate also succeeds to the benefits of the Secret Gulch Road Easement appurtenant to the original dominant estate, as owned by Valley Mining.

## CONCLUSION

¶17 The District Court erred in its determination that the Secret Gulch Road Easement was in gross. Rather, this Court concludes the Secret Gulch Road Easement is appurtenant, with Government Lot 3 as the servient estate, and Government Lot 7 as the dominant estate. As such, Wilkinson has the right to utilize the Secret Gulch Road Easement.

¶18 Reversed.

/S/ LAURIE McKINNON

We concur:

/S/ INGRID GUSTAFSON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JAMES JEREMIAH SHEA

12