No. 86-246

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

WESTMONT TRACTOR COMPANY,

        Plaintiff and Appellant,

-vs-

CONTINENTAL I, INC., an Idaho
Corp., and CHARLES A. WHITE,
an individual,

        Defendants and Respondents.

---

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Datsopoulos, MacDonald & Lind; Richard A. Reep,
        Missoula, Montana

    For Respondent:

        Boone, Karlberg & Haddon; William L. Crowley,
        Missoula, Montana

---

Submitted on Briefs: Oct. 23, 1986

Decided: December 31, 1986

Filed: DEC 31 1986

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Plaintiff Westmont Tractor Company appeals from a summary judgment granted to defendant Charles White in the District Court, Fourth Judicial District, Missoula County. We affirm the District Court's judgment.

The dispute in this case arises over a series of unpaid debts between the plaintiff Westmont Tractor Company and the defendants Continental I, Inc. and Charles White, former president of Continental. In its complaint, Westmont alleged five counts of unpaid indebtedness, plus one count for attorney fees incurred in its collection efforts. A default judgment was entered against Continental I on February 5, 1985. A hearing was held April 25, 1985 on defendant White's alternative motion for summary judgment, and proceedings continued until November 27, 1985 when the District Court entered its findings of fact and conclusions of law, ordering summary judgment in favor of defendant White on all counts. The court also set a hearing for award of attorney fees. Judgment was entered January 28, 1986 awarding White $9,207.00 in attorney fees.

The issues presented for our review are:

1. Whether the District Court erred in granting summary judgment?

2. Whether the District Court erred in awarding attorney fees to the defendant?

In order to determine whether summary judgment was proper, we review the pleadings, affidavits, answers to interrogatories and admissions on file to establish whether any genuine issues of material fact are presented. If there

is no genuine issue as to any material fact, then the moving party is entitled to summary judgment as a matter of law. Reagan v. Union Oil of California (Mont. 1984), 675 P.2d 953, 956, 41 St.Rep. 131, 134.

Westmont first argues it was error for the District Court to make findings of fact, rather than to conclude factual issues remained to be determined. Under Rule 52(a), M.R.Civ.P., findings of fact are unnecessary on summary judgment motions. Lewis v. State, Dept. of Revenue (Mont. 1984), 675 P.2d 107, 114, 41 St.Rep. 9, 17. However, an analysis of the findings is useful in determining the correctness of the summary judgment involved. Upper Missouri G & T Electric Co-op., Inc. v. McCone Electric Co-op., Inc. (1971), 157 Mont. 239, 244, 484 P.2d 741, 744. Thus, we will examine the District Court's findings for evidence of the existence or non-existence of genuine and material factual issues.

We first note the specific claims made in Westmont's complaint. Count I was a request for a deficiency judgment on an installment sales contract for heavy equipment. A security interest in the contract was perfected April 22, 1974. Collateral for the security interest consisted of the heavy equipment purchased by Continental. Charles White signed the security agreement as an individual guarantor for Continental. When Continental defaulted on its payments under the contract, Westmont repossessed the heavy equipment pursuant to a voluntary repossession agreement executed between itself and Continental. This agreement was signed February 27, 1976 by Robert Street, who had replaced Charles White as president of Continental.

Count II of Westmont's complaint alleged defendants were in default on payments for the lease of a Euclid TS-14 scraper. Westmont and Continental entered into a lease agreement March 24, 1972. Charles White signed this agreement as an individual guarantor. A U.C.C. financing statement was also filed on this lease March 27, 1972. The lease agreement provided for rental payments of $2,500.00 the first month, $2,000.00 for the next twelve months, and $1,650.00 for each month thereafter. Paragraph 12 of the stipulations and conditions of the lease stated that title to the leased equipment remained vested in the owner, and the lessee had no option to purchase the equipment. However, when Continental defaulted on its lease payments, Westmont "purchased" the scraper and credited $13,000.00 to Continental's delinquent account.

Count's III and V of Westmont's complaint are requests for payments on delinquent open accounts. Continental kept open accounts for parts and services (Count III) and for rentals (Count V). Continental owed $39,887.85 on its parts and services open account for the period from April, 1974, to January, 1978. It owed $4,052.39 on its rental account for the period from August, 1974, to February, 1976. In response to defendant White's request for admissions, Westmont admitted that the debts incurred on these open accounts were corporate liabilities, rather than liabilities personally incurred by Charles White.

Count IV alleges breach of payment on a promissory note signed by Continental and co-signed by White "as an individual." This note apparently was the security for the refinancing of charges made on the above open accounts prior to February 28, 1974. Westmont filed a security agreement on

- 4 -

this note April 10, 1974, listing as collateral the Euclid TS-14 scraper (the same scraper listed as collateral in the lease agreement) and a Euclid waterwagon. A payment of $30,486.39 plus interest at 10% was due on the note on December 10, 1974, and was never paid.

Count VI is a request for attorney fees incurred in the attempted collection of the debts.

After reviewing the parties' pleadings, interrogatories, request for admissions, requests for production, and affidavits, the District Court made findings of fact and conclusions of law as follows:

FINDINGS OF FACT

I

There is no genuine issue as to any material fact.

II

Plaintiff and Defendant Corporation entered into a security agreement by which Defendant Corporation granted Plaintiff a security interest in certain corporate property. Defendant White signed the security agreement as individual guarantor.

III

Plaintiff was granted the security agreement to secure corporate obligations set forth in Counts I, II and V [sic] of the Complaint.

IV

Plaintiff repossessed and disposed of the secured property.

V

Plaintiff did not give Defendant White reasonable notice of the time and place of any public sale or reasonable notice of the time after which any private sale or other intended disposition [of] collateral was to be made as required by §30-9-504(3), MCA.

VI

Defendant White did not, after default, sign a written statement renouncing or modifying his right to notification.

## VII

Defendant Corporation maintained an open account with Plaintiff as alleged in Count III.

## VIII

Defendant White was not a party to the agreement alleged in Count III either individually or as guarantor.

## IX

Defendant Corporation and Plaintiff entered into an agreement whereby Plaintiff extended Defendant Corporation a line of credit on a rental account as alleged in Count V.

## X

Defendant White was not a party to the agreement alleged in Count V either individually or as a guarantor.

From the foregoing Findings of Fact, the Court now makes the following:

## CONCLUSIONS OF LAW

### I

Defendant White is not legally obligated for the obligations alleged in Counts III and V.

### II

Since Plaintiff failed to comply with §30-9-504(3), MCA with respect to Defendant White, Plaintiff is barred from recovering any deficiency judgment from Defendant White.

The court then directed a summary judgment in defendant White's favor.

The purpose of summary judgment is to encourage judicial economy through the prompt elimination of questions not deserving of resolution by trial. Harland v. Anderson (1976), 169 Mont. 447, 450, 548 P.2d 613, 615. While the initial burden is on the moving party to establish there are no genuine issues of material fact, the burden shifts to the opposing party once the showing has been made that no issues of material fact exists. Id. at 451, 548 P.2d at 615. The

- 6 -

party opposing the motion must present material facts in dispute, not ones which are fanciful, frivolous, gauzy or merely suspicions. Silloway v. Jorgenson (1965), 146 Mont. 307, 310, 406 P.2d 167, 169.

Findings of Fact VII through X are essentially uncontroverted. In Counts III and V of the complaint, Westmont seeks to recover the unpaid sums on two open accounts. However, Westmont has admitted in its answers to White's request for admissions and set of interrogatories that the debts incurred on the accounts were expenses incurred by Continental as a corporation, rather than by White as an individual. Westmont claims it will demonstrate at trial that it relied on oral assurances of payment guaranteed by White personally. However, the court was not required to anticipate further proof at trial. Dooling v. Perry (1979), 183 Mont. 451, 457, 600 P.2d 799, 802. We therefore find summary judgment proper as to Counts III and V of plaintiff's complaint.

We now examine the facts underlying Findings of Fact II through VI. Westmont and Continental entered into three secured transactions. The first was on an installment sales contract for heavy equipment. Continental agreed to purchase a number of pieces of logging equipment, and White signed the agreement as an individual guarantor. Westmont filed a financing statement perfecting its interest in April, 1974, and listed the heavy equipment as collateral.

The second secured transaction was a lease agreement entered into for the "lease" of a scraper. White also signed this agreement as an individual guarantor. Westmont filed a financing statement on the lease agreement, listing the scraper as collateral. Westmont argues the District Court

erred in concluding the lease agreement was a lease purchase agreement, rather than leave for trial the issue of whether the lease was or was not a "true lease." We find ample evidence to support the District Court's finding that the lease was in fact a sale. First, Westmont itself refers to the agreement as a "lease purchase agreement" in its answers to White's interrogatories. Second, Westmont's vice-president of finance, Walter Kero, in a statement attached to White's attorney's affidavit refers to the agreement as a "lease purchase contract." Finally, Westmont's own treatment of the collateral strongly implies the transaction was actually a sale. Upon default, Westmont "purchased" the scraper, credited Continental's account for the "purchase price" of $13,000.00 and then resold the scraper to a third party. In light of these facts, we find no genuine issue of fact existed as to the status of the lease purchase agreement.

The third secured transaction was the execution of a promissory note signed by Continental and Charles White "as an individual." The note stated, "Each and every party signing or endorsing this note hereby waives presentment, demand, protest and notice of nonpayment thereof, and declares himself bound thereon _as_ _a_ _principal_ _and_ _not_ _as_ _a_ _surety_." (Emphasis added.) From the face of the note, it appears White signed expressly as a co-maker rather than as a guarantor. The note was secured by the same TS-14 scraper which secured the lease purchase agreement, and also by a Euclid waterwagon. The note apparently was used to refinance earlier debts on the open accounts noted above.

In February, 1976, Westmont and Continental entered into a voluntary repossession agreement. The agreement stated

that whereas Continental was in default on its installment sales contract, lease agreement, promissory note and open accounts, and whereas Continental had already voluntarily returned all the equipment listed as collateral for the various debts, Continental and Westmont agreed to have Westmont sell the equipment and apply the proceeds to the debts. Continental waived the requirement that the equipment be sold at public auction and authorized Westmont to dispose of the equipment through private sales. Continental also agreed to pay any deficiency arising from the sales.

The agreement was signed by Robert Street, then president of Continental. A copy of the agreement was never sent to White, and in fact he never saw the agreement until the period of discovery in this action. Westmont does not dispute the fact notice of this agreement was never sent to White. It argues rather a theory of constructive notice, that White should have been aware of this agreement since the final, mutual release between White and Continental was not signed until October, 1975. White has sworn in his affidavit that he took no part in Continental's business after December, 1974. Westmont has not produced evidence sufficient to rebut this statement. We therefore conclude no material issue of fact exists to dispute the contention that White never received notice of the repossession and sale of the collateral which secured the installment sales contract, the lease purchase agreement or the promissory note.

In Montana, failure of a secured party to provide notice of sale of collateral as required under § 30-9-504(3), MCA, bars the secured party from obtaining a deficiency judgment from the debtor. Bank of Sheridan v. Devers (Mont. 1985), 702 P.2d 1388, 1390, 42 St.Rep. 1107, 1110-11; Wippert v.

- 9 -

Blackfeet Tribe (Mont. 1985), 695 P.2d 461, 465, 42 St.Rep. 200, 204. White, as an individual guarantor[1] on the installment sales contract and lease agreement, and as a co-maker of the promissory note, was entitled to notice prior to Westmont's repossession and sale of the collateral. Failure to give notice precludes Westmont from recovering a deficiency judgment on the three secured transactions.

Westmont's final assignment of error to the District Court is its award of attorney fees to White. Under the provisions of the three contracts, Westmont was entitled to attorney fees in its prosecution of action against the debtor. Under § 28-3-704, MCA, the contractual right to attorney fees is reciprocal. Northwestern National Bank of Great Falls v. Weaver-Maxwell, Inc. (Mont., No. 85-419, Decided November 13, 1986), 43 St.Rep. 1995, 2003. We find no abuse of discretion in the District Court's award of attorney fees to White.

Judgment of the District Court is affirmed.

_John G. Sheehy_
Justice

We Concur:

_John Conway Harrison_

---

[1] We distinguish here First National Park Bank v. Johnson (9th Cir. 1977), 553 F.2d 599, 602. In that case, the court found that a guarantor was not a debtor for the purpose of waiving the notice requirement of §§ 30-9-501(3) and -504(3), MCA. A debtor is given the opportunity to waive notification of sale after default, but may not waive notice of repossession and sale prior to default. In this case, White was not at any time given an opportunity to waive notification.

L. C. Gulbrandson

Justices