Justice Beth Baker delivered the Opinion of the Court.
***252 ¶1 Charlene Hutzenbiler appeals an order of the Thirteenth Judicial District Court, Yellowstone County, granting RJC Investment, Inc. ("RJC") summary judgment on Hutzenbiler's claim to an accounting and recovery of surplus proceeds on the resale of her mobile home after she returned it to RJC. We restate the dispositive issues as follows:
1. Did the Release between Hutzenbiler and RJC terminate application of the Uniform Commercial Code's requirement for an accounting and surplus after RJC sold the collateral?
2. Did the District Court err in determining that the Release constituted an acceptance of the collateral in full satisfaction of Hutzenbiler's secured obligation?
3. Is RJC entitled to summary judgment on other statutory or equitable grounds?
We reverse the District Court's summary judgment order and remand for further proceedings.
PROCEDURAL AND FACTUAL BACKGROUND
¶2 Hutzenbiler entered into an Installment Sale Contract and Security Agreement (the "Contract") with Cherry Creek Development, Inc. ("Cherry Creek") to purchase a mobile home in March 2010. The purchase price of the mobile home was $ 47,500. Cherry Creek retained a security interest in the mobile home to secure Hutzenbiler's payment obligations. Hutzenbiler paid $ 3,800 down and agreed to pay $ 483 per month for fifteen years to pay off the remaining $ 43,700 balance, with payments due on the 19th of each month. The Contract provided that a late fee would be charged for any payment that was five days past the due date. Cherry Creek assigned the Contract to its parent company, RJC.
¶3 Hutzenbiler acknowledges that she made some of her payments late but disputes that she "missed" payments or was in default. On December 10, 2015, Hutzenbiler vacated the mobile home and allowed ***253 RJC to take possession of it. Hutzenbiler signed a Full Release of Contract (the "Release"), under which she relinquished all rights to the mobile home. The Release reads in its entirety as follows:
I/We Charlene L. Hutzenbiler herby [sic] release all rights to the manufactured home located at 8 Lapin St. N, Billings, MT 59105 described by serial number HY12485 am [sic] releasing myself and removing my name off of the contract currently in place with RJC Investment, Inc. and Cherry Creek Development, Inc. I am fully aware that by signing this I am completely removing my rights to all aspects of the home and I will not be entitled to any rights of this home or refund of all money applied to the home including but not limited to the down payment, and all payments *380 made on the home and the lot up to this day.
(Emphasis in original). The Release was executed by Hutzenbiler and by Roy Clause, as President of Cherry Creek and RJC. When the Release was executed, Hutzenbiler owed $ 34,499.01 under the Contract.
¶4 RJC resold the mobile home in February 2016, without notice to Hutzenbiler, for $ 45,500. Hutzenbiler's counsel requested an accounting of the sale from RJC, but RJC failed to provide one. RJC did not refund any surplus to Hutzenbiler and claims none was owed. Hutzenbiler sued RJC for failing to provide for an accounting of the results of the resale of the mobile home pursuant to § 30-9A-616(2)(a)(ii), MCA ; for failing to pay her the surplus proceeds of the mobile home's resale pursuant to § 30-9A-615(4)(a), MCA ; and alleging that the trial court should apply all her payments to the principal, providing for a larger surplus, because RJC failed to comply with the Retail Installment Sales Act (RISA), Title 31, chapter 1, part 2, MCA.
¶5 RJC moved for summary judgment, asserting that the Release terminated the underlying Contract and any further application of Uniform Commercial Code ("U.C.C.") Article 9.[1] RJC argued that even if Article 9 still applied, the parties' execution of the Release constituted an acceptance of the mobile home in full satisfaction of Hutzenbiler's obligations. RJC argued in the alternative that, because RJC was unaware that Hutzenbiler remained a debtor, it could not remain liable under the U.C.C. RJC alternatively argued that Hutzenbiler was equitably estopped from pursuing her claims because she made false representations that she would not pursue her rights ***254 under the U.C.C. when she signed the Release.
¶6 The District Court granted RJC's motion for summary judgment, holding that Hutzenbiler did not state a claim upon which relief could be granted under any reading of Montana law. The court reasoned that "[t]his identical issue was previously heard ... in Kapor v. RJC Investment, Inc. ," Thirteenth Judicial District Cause No. DV 17-0311, and concurred with the district court's opinion and order in that case.[2] The District Court did not address RJC's other alternative arguments.
STANDARD OF REVIEW
¶7 We review de novo a district court's grant or denial of summary judgment, applying the criteria of M. R. Civ. P. 56. Yorlum Props., Ltd. v. Lincoln County , 2013 MT 298, ¶ 12, 372 Mont. 159, 311 P.3d 748. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3). We view the evidence in the light most favorable to the party opposing summary judgment, and we draw reasonable inferences in favor of the party opposing summary judgment. Maier v. Wilson , 2017 MT 316, ¶ 15, 390 Mont. 43, 409 P.3d 878. Where the material facts are undisputed, we "identify the applicable law, apply it to the uncontroverted facts, and determine who prevails." Yorlum Props., Ltd. , ¶ 12. The determination whether a party is entitled to judgment on the facts is a conclusion of law, which we review for correctness. Yorlum Props., Ltd. , ¶ 12.
DISCUSSION
¶8 1. Did the Release between Hutzenbiler and RJC terminate application of the Uniform Commercial Code's requirement for an accounting and surplus after RJC sold the collateral?
¶9 The District Court held that Article 9 did not apply after the Release was executed because it severed all security interests created under the original contract. Because the U.C.C. no longer applied, the District Court determined that Hutzenbiler had no right to any surplus from the repossession sale. Hutzenbiler argues that Article 9 imposed duties on RJC that survive the *381 discharge of the security interest, including the duty to account for the proceeds and expenses of the sale ***255 and the duty to pay her the alleged surplus. The parties disputed facts concerning Hutzenbiler's payments on the contract. Because it addressed the issues the parties presented and concluded that Article 9 no longer applied after the Release was executed, the District Court did not determine whether Hutzenbiler was in default or analyze her claims further.
¶10 Kapor involved similar facts and a virtually identical release to the one Hutzenbiler signed. In Kapor , the trial court granted RJC's motion for summary judgment after it determined that Article 9 no longer applied once Kapor executed the release, and even if Article 9 applied, the release constituted an acceptance of the collateral in full satisfaction of the secured obligation. We held, "Except as allowed under other U.C.C. provisions, [a party's] discharge or release [of obligations under a secured transaction for the sale of a mobile home] cannot [ ] waive or vary [the creditor's] duty to account for or [the debtor's] right to receive any surplus proceeds from the resale of the mobile home." Kapor , ¶ 13. Sections 30-9A-608(1)(d) and -615(4)(a), MCA, provide that a "secured party shall account to and pay a debtor for any surplus" from proceeds of the sale of collateral. Section 30-9A-602(5), MCA, expressly forbids a debtor from waiving protections the U.C.C. provides for payment of surplus proceeds of collateral.
¶11 Pursuant to § 30-9A-616(2), MCA, when the debtor is entitled to a surplus or a consumer is liable for a deficiency, a creditor must provide a debtor with an explanation of how the proceeds obtained from the sale of collateral were applied to the debtor's account. In every consumer-goods transaction, the debtor is entitled to know the amount of a surplus or deficiency and the basis upon which it was calculated. Section 60-9A-616, MCA, cmt. 2. Section 30-9A-210(2)(a), MCA, also provides that a secured party is required to provide an accounting explanation within 14 days of receipt of request. Section 30-9A-602(2) and -602(9), MCA, expressly forbid either party from waiving the protections the U.C.C. provides for the accounting explanation.
¶12 We held in Kapor that "[t]he Release did not, by its express terms, lift the parties' relationship from that of debtor and creditor under U.C.C. Article 9 or render obsolete the protections afforded a debtor under §§ 30-9A-608(1)(d) and -615(4)(a), MCA." Kapor , ¶ 14. "Article 9 may still require the creditor to account for a surplus realized from the collection of an account or from the disposition of the collateral." Kapor , ¶ 14 (internal citation and quotations omitted).
¶13 The Release that Hutzenbiler executed is substantively identical ***256 to the release that Kapor executed. The Release cannot waive or vary Hutzenbiler's right to an accounting or to receive surplus proceeds, if any, from resale of the mobile home. The Release also did not terminate the application of the U.C.C. altogether. The parties were free to discharge their obligations to one another, but that discharge could not waive the protections provided in the U.C.C. Kapor , ¶ 13. Kapor is controlling.
¶14 The statutory requirements are triggered when the debtor defaults. See § 30-9A-601, MCA (explaining that "this part" governs the secured party's rights after default). That question remains to be decided here. Despite the Dissent's invitation, we decline to conduct an independent review of the summary judgment record to decide sua sponte whether Hutzenbiler was in default. That issue was not litigated by the parties, developed in the record, decided by the District Court, or briefed on appeal. See Pilgeram v. GreenPoint Mortg. Funding, Inc. , 2013 MT 354, ¶¶ 20-21, 373 Mont. 1, 313 P.3d 839 (explaining that we do not consider new arguments for the first time on appeal because it would be fundamentally unfair to the parties).
¶15 The record indicates that the parties disputed whether Hutzenbiler had defaulted on her obligations, but neither party made an argument regarding the effect of any default or lack thereof. Clause stated in his affidavit that, "From 2013 through 2015 , Hutzenbiler repeatedly failed to meet her obligations under the Contract, and failed to make her monthly payments on numerous occasions."
*382 (Emphasis added.) Hutzenbiler asserted in her summary judgment response that "[t]here are disputed facts concerning the Plaintiff's payments on the contract," and that she had not "missed" payments as averred by Clause but had made all of her payments within the "statutory" grace period. It seems odd, indeed, that Hutzenbiler would maintain she never defaulted when that well could defeat her U.C.C. arguments. Also odd, if in fact supported in the existing record, is that RJC has not argued Hutzenbiler's lack of default to refute her claims. We simply take the case in the procedural posture presented and will not speculate on the arguments, if any, the parties may have regarding Hutzenbiler's default or its effect on the statutory requirements. The District Court erred when it granted RJC summary judgment on the ground that the U.C.C. no longer applied after Hutzenbiler signed the Release.
¶16 2. Did the District Court err in determining that the Release constituted an acceptance of the collateral in full satisfaction of Hutzenbiler's secured obligation?
***257 ¶17 The District Court alternatively held that even if Article 9 does apply, the Release constituted full satisfaction of the parties' respective obligations under the contract in accordance with § 30-9A-620(1), MCA. Hutzenbiler argues that the Release did not satisfy the requirements of strict foreclosure because the Release did not contain any language releasing the claims of RJC. Hutzenbiler adds that the Release was signed before she was in default, and strict foreclosure therefore is not permitted. RJC responds that the undisputed facts establish strict foreclosure in compliance with the statute.
¶18 Addressing the same arguments on identical release language, we held in Kapor : "[T]here must be mutual agreement between the parties; the statute does not allow a creditor to obtain a debtor's relinquishment of rights without accepting the collateral in satisfaction of the debt and waiving its right to pursue a deficiency." Kapor , ¶ 24. "Although explicit language may not be required, the document must indicate at least that [the creditor] was giving up its right to seek a deficiency from [the debtor] or was accepting the collateral in full satisfaction of the obligation." Kapor , ¶ 27.
¶19 Kapor requires a like conclusion in this case. Whether Hutzenbiler was or was not in default, the plain language of the Release is insufficient for strict foreclosure. As in Kapor , RJC did not include any language in the Release that it accepted the collateral in satisfaction of the obligation, that it released Hutzenbiler from all her obligations, or that it relinquished its right to pursue a deficiency judgment against her if the mobile home sold for less than the owed principal. The District Court erred in granting RJC summary judgment on the ground that RJC satisfied the elements of the acceptance of collateral in full satisfaction pursuant to § 30-9A-620, MCA.
¶20 3. Is RJC entitled to summary judgment on other statutory or equitable grounds?
¶21 RJC argues that the District Court could have granted summary judgment on the alternative ground that the exculpatory provision of the U.C.C. absolved RJC of any liability because RJC had no reason to believe Hutzenbiler remained a debtor after signing the Release. Section 30-9A-628(2), MCA, provides that a secured party is not liable because of its status as a secured party unless the secured party knows that the person is a debtor. See also § 30-9A-605(1), MCA. The Official Comments explain that without this provision "a secured party could incur liability to unknown persons and unknown circumstances that would not allow the secured party to protect itself." Section 30-9A-628, MCA, cmt. 2. An example of an unknown debtor is ***258 when "a secured party may be unaware that the original debtor has sold the collateral subject to the security interest and that the new owner has become the debtor." Section 30-9A-605, MCA, cmt. 2. Hutzenbiler was not an "unknown" debtor. Cherry Creek assigned RJC the Contract that Cherry Creek and Hutzenbiler entered to create the debtor/creditor relationship, and RJC collected payments from Hutzenbiler under that Contract. RJC *383 is not entitled to summary judgment under §§ 30-9A-605(1) or -628(2), MCA.
¶22 Finally, RJC argues that the District Court also could have granted RJC summary judgment on the ground that Hutzenbiler was equitably estopped from asserting her claims because of her alleged false representations through the Release that she would not seek remedies under the U.C.C. We resolved this issue in Kapor , ¶¶ 31-37. The same holding applies. RJC is not entitled to summary judgment on other statutory or equitable grounds.
CONCLUSION
¶23 The District Court erred in granting RJC summary judgment on the grounds that Article 9 no longer applied after the Release was signed and that the Release satisfied the elements of strict foreclosure. Because the District Court held the U.C.C. inapplicable, it did not reach the merits of Hutzenbiler's claims; nor do we. The case is remanded to the District Court for further proceedings consistent with this Opinion.
We Concur:
MIKE McGRATH, C.J.
INGRID GUSTAFSON, J.
JAMES JEREMIAH SHEA, J.

U.C.C. Article 9 is codified in Title 30, chapter 9A, MCA.

This Court reversed that district court order in Kapor v. RJC Investment, Inc. , 2019 MT 41, 394 Mont. 311, 434 P.3d 869.