Justice James Jeremiah Shea delivered the Opinion of the Court.
***145 ¶1 Appellants Than Edward Christman and Tina Marie Christman (collectively "Christmans") appeal the Order of the Thirteenth Judicial District Court, Yellowstone County, denying their Motion for Summary Judgment. We address the following issue:
Whether the District Court erred in denying the Christmans' Motion for Summary Judgment.
¶2 We reverse.
*474 PROCEDURAL AND FACTUAL BACKGROUND
¶3 On October 14, 2009, the Christmans and Roy and Betty Clause (collectively "Clauses") entered into an Installment Sale Contract and Security Agreement (Agreement) to buy a mobile home in Cherry Creek Development.[1] The Christmans were to purchase the mobile home for $ 68,900 from the Clauses. They paid $ 5,512 down and financed the balance of $ 63,388, to be paid in monthly installments of $ 701 for a period of fifteen years.
¶4 The Agreement gave the Clauses a security interest in the mobile home. The Agreement included the following provision regarding potential default by the Christmans:
Default . If [the Christmans] fail[ ] to perform any of the covenants or promises called for hereunder such failure shall, at the election of [the Clauses] constitute a default in the performance of this agreement. If [the Christmans] fail[ ] to cure any such default within [ ] THIRTY (30) days after written notice thereof to [the Christmans], [the Clauses] may, without further notice or period of grace, declare the entire unpaid balance of the purchase price, principal and accrued interest, immediately due and payable. Upon nonpayment thereof, after the same shall become due and payable, [the Clauses] may as an alternative to any other remedy provide [sic] at law or equity, terminate this agreement and retain all payments made as liquidated damages for breach of this agreement and rent for the use of the property. [The Christmans] and [the Clauses] agree that THIRTY (30) days notice is a reasonable time period for notice of termination of this agreement.
¶5 From 2009-2015, the Christmans continually missed payments on their mobile home, only to then make large lump sum payments to bring the loan current. The Clauses made accommodations, including adjusting the loan in November 2014 to put the delinquent amount at the end of the loan, but the Christmans again fell behind on payments.
***146 On August 21, 2015, the Clauses sent the Christmans a Notice of Default. On September 18, 2015, the Christmans paid $ 2,900 in an attempt to become current. Four days later, the Clauses sent a notice that they were invoking the acceleration clause in the default provision of the Agreement and demanded the outstanding balance on the Agreement plus notice fees, a total of $ 57,397.64, within thirty days. In December 2015, after receiving the acceleration notice, the Christmans moved out of the mobile home and voluntarily returned it to the Clauses. At that point, the Christmans owed a balance of $ 54,205.54. The Clauses testified they then spent $ 3,273.83 refurbishing and repairing the mobile home. Two months later, the Clauses sold the mobile home to a new buyer for $ 59,800.
¶6 On January 18, 2017, the Christmans brought suit against the Clauses.[2] On February 14, 2017, the Christmans filed an amended complaint, alleging that the Clauses violated provisions of Article 9A of Montana's adopted version of the Uniform Commercial Code (U.C.C.). The Christmans alleged that the Clauses failed to resell the mobile home in a commercially reasonable manner as required by § 30-9A-625(4), MCA. The Christmans sought $ 69,672 in damages under § 30-9A-625(3)(b), MCA : the time price differential plus ten percent of the cash price. Alternatively, Christmans alleged that they were entitled to any surplus realized for the resale of the mobile home pursuant to § 30-9A-615(4)(a), MCA. The Christmans asserted they owed a balance of $ 17,169.50, and that the Clauses resold the mobile home for $ 59,800, amounting to a surplus of $ 42,630.50. The Christmans also contended that the Clauses were barred from collecting any late fees, finance charges or collection costs on the Agreement because the Agreement violated various provisions of Montana's Retail Installment Sales Act (RISA).
*475 ¶7 On June 13, 2017, the Christmans moved for summary judgment. On March 9, 2018, the District Court denied the Christmans' Motion. The District Court held there were material facts in dispute as to both the application of the U.C.C. to the Agreement and whether the Christmans were equitably estopped from asserting their claims against the Clauses.
¶8 On March 26-28, 2018, the District Court presided over a jury trial. On March 28, 2018, the jury returned a verdict in favor of the ***147 Clauses. The jury unanimously agreed that the Clauses proved that the Agreement terminated when the Christmans moved out of the mobile home in December 2015. Following the jury verdict, the District Court entered a Final Judgment in which it ordered that the Christmans' action against the Clauses be dismissed on the merits, and that the Christmans pay the Clauses' costs.
¶9 On May 2, 2018, the Christmans moved for a new trial pursuant to M. R. Civ. P. 59(a)(1)(A). The District Court denied the Christmans' Motion.
STANDARDS OF REVIEW
¶10 We review a district court's summary judgment ruling de novo, applying the criteria of M. R. Civ. P. 56. McClue v. Safeco Ins. Co. , 2015 MT 222, ¶ 8, 380 Mont. 204, 354 P.3d 604 ; Yorlum Props., Ltd. v. Lincoln County , 2013 MT 298, ¶ 12, 372 Mont. 159, 311 P.3d 748. Whether a party is entitled to judgment on the facts is a conclusion of law that this Court reviews for correctness. Hutzenbiler v. RJC Inv., Inc. , 2019 MT 80, ¶ 7, 395 Mont. 250, 439 P.3d 378 (citing Yorlum Props., Ltd. , ¶ 12 ). Summary judgment is appropriate only when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3) ; Svaldi v. Anaconda-Deer Lodge County , 2005 MT 17, ¶ 12, 325 Mont. 365, 106 P.3d 548. The evidence, as well as all justifiable inferences drawn from it, must be viewed in a light most favorable to the non-moving party. Svaldi , ¶ 12.
DISCUSSION
¶11 Whether the District Court erred in denying the Christmans' Motion for Summary Judgment.
¶12 Generally, Montana law allows for a "contract in writing [to] be altered by a contract in writing or by an executed oral agreement, and not otherwise." Section 28-2-1602, MCA. However, contracts involving secured transactions are governed by Montana's adopted version of the U.C.C., codified at Title 30, Chapter 9A, and subject both the debtor and creditor parties to additional obligations and rights.
¶13 The Agreement between the Christmans and Clauses involved the sale of a consumer good[3] (the mobile home) in which the ***148 Clauses took a security interest. The creation of the security interest in the mobile home triggered the applicability of Title 30, Chapter 9A. E.g. , § 30-9A-102(1)(bbb), MCA.
¶14 Section 30-9A-610, MCA, provides for disposition of collateral after default. "Default" is generally defined by the security agreement. 4 James J. White, Robert S. Summers, & Robert A. Hillman, Uniform Commercial Code: Practitioner Treatise Series § 34:5, at 530 (6th Ed. 2015) (internal citations omitted); Hutzenbiler , ¶ 28 (McKinnon, J., dissenting); 68A Am. Jur. 2d Secured Transactions § 426 (2014). After a debtor defaults, a secured creditor who takes possession of the collateral has the following options: (1) file suit on the obligation and reduce its claim to judgment; (2) " 'sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing' "; or (3) " 'accept collateral in full or partial satisfaction of the obligation *476 it secures.' " Kapor v. RJC Inv., Inc. , 2019 MT 41, ¶ 16, 394 Mont. 311, 434 P.3d 869 (citing §§ 30-9A-601(1)(a), -610(1), -620(1), MCA ).
¶15 Accordingly, although a creditor's disposition of the collateral terminates the security interest under § 30-9A-617(1)(b), MCA, termination of the security interest does not do away with the obligations of a creditor under Title 30, Chapter 9A. Section 30-9A-602(5), (13), MCA (a debtor may not waive or vary the rules in § 30-9A-608(1), MCA, and § 30-9A-615(4), MCA, to the extent that they require accounting for or payment of surplus proceeds of collateral); Kapor , ¶ 14. The creditor remains obligated to: give the debtor notice of how the creditor intends to dispose of the collateral; conduct a commercially reasonable resale of the collateral, if there is a resale; and the creditor must account to the debtor for any surplus realized from the sale of the collateral. Sections 30-9A-614, -616, -610, -615, -624, -611, MCA.
¶16 Abandonment, voluntary surrender, or voluntary repossession of the collateral does not waive the debtor's right to notice of resale of the collateral. See § 30-9A-602, MCA ; Westmont Tractor Co. v. Cont'l I, Inc. , 224 Mont. 516, 523-24, 731 P.2d 327, 331 (1986) ; see also § 30-9A-619(3), MCA ("transfer of the record or legal title to collateral to a secured party ... does not of itself relieve the secured parties of its ***149 duties under this chapter. ..."). Thus, a debtor who voluntarily returns a mobile home to the creditor is still entitled to notice. See Kapor , ¶¶ 13-14, 23, 28 ; Hutzenbiler , ¶¶ 11, 13-14 ; see also W. Nat'l Bank of Casper v. Harrison , 577 P.2d 635, 638 (Wyo. 1978) ; Lindberg v. Williston Indus. Supply Corp. , 411 N.W. 2d 368, 373 (N.D. 1987) ; Vermont Nat. Bank v. Hamilton , 149 Vt. 477, 546 A.2d 1349, 1352 (1988). A debtor may waive notice of disposition of collateral under § 30-9A-611, MCA, only through an authenticated, signed writing after default. Section 30-9A-624(1), MCA.
¶17 Where there are no questions of fact with regards to the adequacy of or failure to give notice, a court may properly determine the adequacy of a particular notice as a matter of law. See Westmont Tractor Co. , 224 Mont. at 520-21, 523, 731 P.2d at 329-31 (citing § 30-9-504, MCA, now § 30-9A-611, MCA ); see also Mack Fin. Corp. v. Tezak , 253 Mont. 492, 495-96, 834 P.2d 396, 397-98 (1992) (citing § 30-9-504, MCA, now § 30-9A-611, MCA ); 68A Am. Jur. 2d Secured Transactions § 605.
¶18 The right of the debtor for any surplus obtained from the sale of collateral is set out in two places in Article 9 of the U.C.C.: § 30-9A-608(1)(d), MCA, and § 30-9A-615(4)(a), MCA. Surplus money is generated by the sale of the debtor's assets "over and above the amount needed to satisfy the debtor's obligations to the secured lender, the secured lender is obligated to make an accounting to the debtor and to pay over to the debtor any such surplus." 68A Am. Jur. 2d Secured Transactions § 554 ; §§ 30-9A-615(6), -626, MCA. "Except as allowed under other U.C.C. provisions, [a party's] discharge or release [of obligations under a secured transaction for the sale of a mobile home] cannot [ ] waive or vary [the creditor's] duty to account for or [the debtor's] right to receive any surplus proceeds from the resale of the mobile home." Kapor , ¶ 13 ; Hutzenbiler , ¶ 10 ; § 30-9A-602, MCA.
¶19 If a secured party fails to comply with the requirements of Title 30, Chapter 9A, and the collateral is a consumer good, the debtor "may recover for that failure in any event an amount not less than the credit service charge plus 10% of the principal amount of the obligation or the time-price differential plus 10% of the cash price." Section 30-9A-625(3)(b), MCA ; see also Bank of Sheridan v. Devers , 217 Mont. 173, 177, 702 P.2d 1388, 1390 (1985) (where a creditor failed to provide a debtor with adequate notice, the creditor was precluded from recovering any deficiency judgment from the debtor).
¶20 Recently, we reversed the district courts' rulings in two cases where the district courts determined that the U.C.C. no longer governed the sales contracts and installment agreements between a ***150 creditor and debtors selling and purchasing mobile homes. Kapor , ¶¶ 14, 30 ; Hutzenbiler , ¶¶ 9, 15. The debtors in Kapor and Hutzenbiler signed releases provided by the creditor purporting to terminate *477 the installment agreements. Kapor , ¶¶ 3-5 ; Hutzenbiler , ¶¶ 3-5. The creditor then resold the mobile homes without providing the debtors notice of the resale of the mobile home or an accounting of any potential surplus. Kapor , ¶¶ 3-4 ; Hutzenbiler , ¶ 4. The districts courts concluded that the releases terminated the installment agreements and ended the applicability of the U.C.C. to the parties' relationship. Kapor , ¶ 5 ; Hutzenbiler , ¶¶ 6, 9. We disagreed, holding that the releases "did not, by [their] express terms, lift the parties' relationship from that of debtor and creditor under U.C.C. Article 9 or render obsolete the protections afforded a debtor under §§ 30-9A-608(1)(d) and -615(4)(a), MCA." Kapor , ¶ 14 ; Hutzenbiler , ¶ 12.
¶21 Here, the District Court denied the Christmans' Motion for Summary Judgment after concluding that neither Montana law nor the U.C.C. rendered the Christmans' waiver (orally and by conduct) ineffective, and that there were genuine issues of material fact as to whether the parties terminated the Agreement. The District Court concluded that the Christmans voluntarily abandoned their mobile home in December 2015 and gave every indication they were cancelling the Agreement and walking away from the mobile home and their payment obligations. Thus, the U.C.C. no longer governed the parties' relationship. The District Court further concluded that even if Article 9 of the U.C.C. applied to bar the parties from terminating the Agreement, there was a genuine issue of material fact as to whether equitable estoppel precluded the Christmans' claims. Accordingly, the District Court could not grant summary judgment to the Christmans on the issue of the Clauses' liability.
¶22 The Christmans argue the material facts of this case are not in dispute, and they were entitled to judgment as a matter of law. They contend that Article 9 of the U.C.C. establishes set procedures that must be followed once a secured party takes possession of the collateral that secures a debt, and that the undisputed facts demonstrate that the Clauses failed to follow those procedures. The Christmans contend that the Clauses failed to give proper notice and to account for any surplus as required by the U.C.C. The Christmans contend that they never waived any rights, either orally or in writing, regarding the mobile home. Finally, the Christmans argue that the Clauses may not assert the defense of equitable estoppel, and that the District Court was wrong when it permitted the Clauses to do so.
¶23 The Clauses counter that the District Court properly denied the ***151 Christmans' Motion for Summary Judgment in light of the disputed issues of material fact. The Clauses argue that the Christmans agreed to terminate the Agreement, vacated the mobile home, and left it to the Clauses. This series of events served to absolve the Christmans of any further obligation they had to pay under the Agreement and transferred their rights in the mobile home back to the Clauses in exchange for discharging the Clauses' contractual obligations to them. The Clauses argue that once the Christmans terminated the Agreement, the security interest the Clauses had in the mobile home dissolved, and the Agreement was no longer governed by Article 9 of the U.C.C. The Clauses contend that even if Article 9 continued to govern the parties' relationship, the Clauses would be entitled to recover a deficiency from the Christmans, and the Christmans would not be entitled to any surplus or damages.
¶24 Finally, the Clauses argue the District Court properly denied the Christmans' Motion for Summary Judgment on the grounds that disputed issues of material fact existed regarding whether the Christmans were equitably estopped from asserting their claims. The Clauses contend they provided substantial evidence to establish all six elements of equitable estoppel, and the District Court correctly concluded there were disputed material issues not proper for resolution on a motion for summary judgment. We disagree.
¶25 There is no dispute that when the parties entered into the Agreement for the sale of the mobile home, the Agreement was governed by Article 9 of the U.C.C. There is also no dispute that the Clauses did not provide notice of the resale of the collateral or account to the Christmans for any potential surplus. See §§ 30-9A-611, -616, -608(1)(d), -615, MCA. The Christmans were *478 in default and vacated because they were unable to pay the more than $ 50,000 due upon invocation of the acceleration clause. A voluntary repossession indicates a debtor has defaulted, but it does not mean a debtor waived all post-default rights and remedies under the U.C.C. or abandoned interest in any potential surplus. See § 30-9A-602, MCA. Regardless of whether the Clauses voluntary repossessed the mobile home after the Christmans vacated the premises, notice to the Christmans was still required. See Westmont Tractor Co. , 224 Mont. at 523-24, 731 P.2d at 331.
¶26 The Christmans' situation is even more attenuated than that of the debtors in Kapor and Hutzenbiler who signed releases that purportedly waived U.C.C. applicability. The protections and obligations under the U.C.C. still governed the Agreement. See Kapor , ¶ 14 ; Hutzenbiler , ¶¶ 12-13. The Clauses did not provide notice of the ***152 resale of the mobile home as required by § 30-9A-611, MCA. The Clauses were obligated to give notice to the Christmans of how they intended to dispose of the mobile home, and they were required to account to the Christmans for any surplus realized from the sale of the collateral. See §§ 30-9A-611, -624, MCA. Although the Christmans theoretically could have waived their right to notice prior to the resale of the collateral, to legitimately do so, any waiver of the notice would have had to take the form of an authenticated writing signed after default. See § 30-9A-624, MCA. In this case, no notice was sent, no authenticated writing was signed, and, consequently, there was no waiver of the right to notice. See § 30-9A-624, MCA.
¶27 There were no genuine issues of material fact as to the Clauses' U.C.C. violations, and the Christmans were entitled to judgment as a matter of law on that issue. See Yorlum Props. Ltd. , ¶ 12 ; M. R. Civ. P. 56. Accordingly, the District Court erred in denying the Christmans' Motion for Summary Judgment as it pertained to the continued application of the U.C.C. to the Christmans' claims. See McClue , ¶ 8 ; Yorlum Props. Ltd. , ¶ 12.
¶28 Finally, the Christmans also argue that the Clauses may not assert the defense of equitable estoppel, and that the District Court was wrong when it concluded the Clauses were permitted to do so. We recently concluded that "the doctrine of equitable estoppel may apply to cases governed by the U.C.C. unless displaced by specific U.C.C. provisions." Kapor , ¶ 32. The Christmans argue that equitable estoppel cannot apply here for four reasons: (1) the Clauses do not have clean hands; (2) public policy dictates that equitable estoppel not apply; (3) estoppel is not available to defeat U.C.C. remedies; and (4) the Clauses' argument of equitable estoppel is disingenuous. The Christmans' argument does not assert any U.C.C. provisions in Article 9 relevant to this case that may displace equitable estoppel. Thus, although the District Court erred by holding that the U.C.C. did not apply to the Christmans' claims, it correctly held that the Clauses may assert equitable estoppel as it may pertain to those claims.
CONCLUSION
¶29 The District Court erred when it denied the Christmans' Motion for Summary Judgment on the grounds that Article 9 no longer applied to the Agreement. We reverse and remand this case to the District Court for further proceedings consistent with this Opinion.
We Concur:
MIKE McGRATH, C.J.
LAURIE McKINNON, J.
BETH BAKER, J.
DIRK M. SANDEFUR, J.

The Clauses own Cherry Creek Development.

The Christmans' first complaint named RJC Investment, Inc. as the defendant in this action. Roy Clause is the President of RJC. Roy and Betty Clause were the named Sellers on the Agreement with the Christmans, and the Christmans named the Clauses as defendants in their amended complaint.

Under the 2009 U.C.C. statutes, which govern the parties' Agreement, "manufactured homes" are defined as "goods" under § 30-9A-102(1)(rr)(i)(E), MCA, and § 30-9A-102(1)(aaa), MCA. Section 30-9A-102(1)(w), MCA, defines a "consumer good" as "goods that are used or bought for use primarily for personal, family, or household purposes." The Christmans testified that they resided in the mobile home and did not use it to conduct any business or rent any portion of it. The mobile home was therefore a "consumer good" within the meaning of § 30-9A-102(1)(w), MCA.