FILED

05/11/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0416

DA 20-0416

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 118N

ANNELIES AIKING-TAYLOR,

      Plaintiff and Appellant,

  v.

OLIVER SERANG,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-19-1076
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Annelies Aiking-Taylor, Self-Represented, Missoula, Montana

      For Appellee:

          Jessie Lundberg, ASUM Legal Services, Missoula, Montana

Submitted on Briefs:  March 10, 2021

Decided:  May 11, 2021

Filed:

                        _____
                                      Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports. Annelies Aiking-Taylor appeals the Fourth Judicial District Court's order granting summary judgment in favor of Oliver Serang and denying her motion for summary judgment ("Order") and its subsequent Judgment granting Serang $1,000 in statutory damages for Aiking-Taylor's two violations of the Montana Consumer Protection Act ("MCPA") and $27,991.25 in attorney fees and costs. We affirm all but the $1,000 in statutory damages.

¶2 On December 3, 2018, Aiking-Taylor filed a complaint in the Missoula County Justice Court alleging that her tenant, Serang, breached his rental agreement by failing to pay his $1,200 last month's rent in August 2018. Aiking-Taylor also alleged that she incurred $130 in bank overdraft fees and penalties as a result of Serang's breach, that Serang failed to pay utility bills as required under the rental agreement, and that Serang left the property in an unclean and damaged condition.[1] Serang filed an answer and counterclaim, disputing the damages and arguing that he withheld the last month's rent only because Aiking-Taylor had represented that she no longer possessed his $1,200 security deposit and would need to borrow money or wait for a new tenant to replenish it.

---

[1] The rental property in question is Aiking-Taylor's personal residence; she rented to Serang while she was in the Netherlands caring for her mother.

Both parties were represented by counsel during the Justice Court proceedings. The matter proceeded to a bench trial. In September 2019, the Justice Court issued an order ("Justice Court's Order") holding that Serang did not have the right to withhold his final month's rent and not pay the utility bills but also that, aside from a broken toilet seat, Aiking-Taylor's damages claims were unsupported. The Justice Court awarded Aiking-Taylor $213.54 in net damages and $500 in attorney fees.

¶3 Despite prevailing in the Justice Court, Aiking-Taylor was "not satisfied with the judgment" and—now pro se—appealed the Justice Court's Order to the District Court. Serang, still represented, filed an amended answer and counterclaim alleging Aiking-Taylor wrongfully withheld his security deposit and violated the MCPA by misrepresenting that she retained Serang's security deposit when in reality she had expended it. The parties filed cross-motions for summary judgment. After considering the summary judgment record and the parties' arguments, the District Court found undisputed that Aiking-Taylor did not provide Serang with a notice of necessary cleaning to be performed pursuant to § 70-25-201(3), MCA, or with a list of damage and cleaning charges within thirty days of the termination of his tenancy pursuant to §§ 70-25-202 and -203, MCA. It therefore granted summary judgment in favor of Serang on Aiking-Taylor's cleaning and damages claims. The District Court also ruled that Aiking-Taylor violated the MCPA by spending Serang's security deposit, falsely implying that she still possessed it, and then ultimately failing to produce it. The District Court granted summary judgment in Serang's favor, dismissed all of Aiking-Taylor's claims except for an unpaid utility bill, and granted Serang's counterclaims in their entirety.

3

¶4      The District Court entered a Judgment awarding Serang $500 in statutory damages for each of Aiking-Taylor's two violations of the MCPA. Pursuant to §§ 70-24-442 and 30-14-133(3), MCA, the court awarded Serang $27,946.25 in attorney fees and $45 in costs. Aiking-Taylor appeals on numerous grounds, which we restate as: whether the District Court erred in dismissing Aiking-Taylor's damages claims; whether the District Court erred in granting Serang's motion for summary judgment on his MCPA claims because Serang did not suffer an "ascertainable loss"; and whether the District Court erred in concluding Aiking-Taylor's conduct violated the MCPA.

¶5      We review a district court's order granting summary judgment de novo. *Hiebert v. Cascade Cty.*, 2002 MT 233, ¶ 19, 311 Mont. 471, 56 P.3d 848 (citations omitted). "Summary judgment is appropriate when the moving party demonstrates an absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *George v. Bowler*, 2015 MT 209, ¶ 9, 380 Mont. 155, 354 P.3d 585 (citations omitted). After the moving party meets this burden, the burden shifts to the opposing party to establish a genuine issue of material fact or that the moving party is not entitled to judgment as a matter of law. *Bowler*, ¶ 9. A material fact must be supported by "material and substantial evidence, rather than mere conclusory or speculative statements. . . . The non-moving party must set forth *specific facts* and cannot simply rely upon [its] pleadings, nor upon speculative, fanciful, or conclusory statements." *Hiebert*, ¶ 21 (citations omitted, emphasis original). "We view the evidence in the light most favorable to the party opposing summary judgment, and we draw reasonable inferences in favor of the party

opposing summary judgment." *Hutzenbiler v. RJC Inv., Inc.*, 2019 MT 80, ¶ 7, 395 Mont. 250, 439 P.3d 378 (citation omitted).

¶6 The District Court found it undisputed that Aiking-Taylor did not provide the notices or otherwise follow the procedure for deducting cleaning and repair fees from a security deposit as provided for in §§ 70-25-201 through -203, MCA. Because Aiking-Taylor did not follow these procedures, the District Court held that she was barred under § 70-25-203, MCA, from attempting to collect damages from Serang for alleged cleaning and damages charges. Since it found no legal basis for Aiking-Taylor to collect these damages, the District Court similarly concluded that Aiking-Taylor had no legal basis to claim Serang is liable to her for any days of rent allegedly lost due to performing cleaning and repairs. The court found no authority for several smaller items of damage Aiking-Taylor claimed. It therefore granted summary judgment in Serang's favor on Aiking-Taylor's damages claims.

¶7 Aiking-Taylor argues that the District Court ignored issues of material fact in reaching its conclusion on the damages issue. Aiking-Taylor points to numerous documents and correspondence she claims demonstrate the existence of a material issue as to whether she followed the proper procedure allowing her to deduct damages from the security deposit. Our review of these documents, however, leads us to conclude that the District Court correctly determined that Aiking-Taylor did not follow the procedures in §§ 70-25-201 through -203, MCA. Specifically, the notice Aiking-Taylor cites as alerting Serang there was cleaning to be accomplished was sent in early September, after Serang's tenancy had ended. The notice states further that Aiking-Taylor already had paid for the

cleaning to be done, denying Serang the opportunity to remedy the alleged damages himself pursuant to § 70-25-201, MCA. Finally, Aiking-Taylor claims the District Court misinterpreted the applicable law, but she cites no authority to support her arguments, relying on her own interpretation of the relevant statutes. The District Court's ruling on Aiking-Taylor's damages claims is affirmed.

¶8 Aiking-Taylor next contends that Serang never suffered an ascertainable loss and therefore, as a matter of law, cannot be awarded damages pursuant to the MCPA. The MCPA states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Section 30-14-103, MCA.

> [A] consumer who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act, or practice declared unlawful by 30-14-103 may bring an individual action but not a class action under the rules of civil procedure in the district court of the county in which the seller, lessor, or service provider resides or has its principal place of business or is doing business to recover actual damages or $500, whichever is greater.

Section 30-14-133(1)(a), MCA. Aiking-Taylor argues that pursuant to this language an "ascertainable loss" is an essential element of a MCPA claim, and because Serang did not argue a monetary or financial loss in the District Court or on appeal, he failed to meet his summary judgment burden.

¶9 We have held that an "ascertainable loss" under the MCPA does not require a showing of "actual damages" where the plaintiff demonstrates facts "sufficient to establish a pecuniary loss." *See Puryer v. HSBC Bank USA, N.A.*, 2018 MT 124, ¶ 36, 391 Mont. 361, 419 P.3d 105 (citing *Jacobson v. Bayview Loan Servicing, LLC*, 2016 MT 101, ¶ 56, 383 Mont. 257, 371 P.3d 397). The District Court found that Serang

6

provided Aiking-Taylor a $1,200 security deposit when he began his tenancy; Aiking-Taylor does not dispute this. Relying on the statutory definition of a "security deposit" as "value given, in money or its equivalent, to secure the payment of rent by the tenant under a leasehold agreement or to secure payment for damage to and cleaning of the leasehold premises," the District Court held that by definition, a security deposit "remains the property of the tenant, held in trust by the landlord." *See* § 70-25-101(4), MCA. Aiking-Taylor does not dispute this holding either. By alleging in his counterclaim that Aiking-Taylor exhausted his security deposit, Serang alleged an ascertainable loss—the loss of his $1,200 security deposit—sufficient to plead a cognizable claim under § 30-14-133, MCA.

¶10 Aiking-Taylor next argues that the District Court erred in concluding she violated the MCPA because failing to hold a tenant's deposit in a separate account is not contrary to public policy and genuine issues of material fact exist regarding whether Aiking-Taylor spent Serang's security deposit or deceptively implied she still possessed it.

¶11 Turning first to the factual issue, Aiking-Taylor argues that the District Court failed to view the evidence in the light most favorable to her and did not consider bank statements and sworn statements she provided, which she claims establish issues of material fact. The District Court found it undisputed that Serang provided Aiking-Taylor with a $1,200 security deposit at the beginning of his tenancy and in June 2018, two months before his rental agreement expired, brought up the possibility of applying his security deposit to his last month's rent. Relying on e-mail correspondence, the District Court found Aiking-Taylor initially refused this arrangement due to concerns the security deposit might

7

be needed to cover repairs but still implied she possessed the deposit. As discussions continued into July, however, Aiking-Taylor stated that she was having financial difficulties and that "I'm borrowing and such. But borrowing $1,200 at once I don't find easy, and even if I could get it from someone here, I would still have to exchange it and send it over to my bank[.]" Serang responded by asking if he paid August's rent, if Aiking-Taylor would be able to refund the deposit by September should she not find a new tenant. Aiking Taylor stated that a new tenant would "solve the problem of the deposit" and that "I'll give you your deposit back as soon as the house has been checked (like sept. 1)[sic], I owe you that, and I'll somehow find a solution to it."

¶12    We agree with the District Court that these statements show without material dispute that Aiking-Taylor did not have Serang's security deposit in her possession by late July 2018. Our review of the documents Aiking-Taylor highlights on appeal confirms this finding. First, the August 2018 bank statement Aiking-Taylor points to clearly shows a starting balance well below $1,200. While it is true that during the month of August a transfer from Aiking-Taylor's mother and an automatic overdraft-protection transfer from the bank raised the account's balance above $1,200, the point stands that as of late July 2018, Serang's deposit was not in Aiking-Taylor's possession. Aiking-Taylor admits as much in the document to which the bank statement was attached:

> [Serang] never asked [me if I] had the security deposit in [my] possession; [I] didn't have it in a bank account, but that had nothing to do with [Serang] getting his deposit back. . . . [I] knew [I] could borrow from [my] mother, as [I] indeed did when [I] discovered [my] overdrawn bank account in August 2018.

8

This statement unambiguously reflects Aiking-Taylor's intent to replenish the security deposit with funds from her mother, which she did in mid-August. The District Court's conclusion from the undisputed record that Aiking-Taylor initially represented to Serang that she possessed his security deposit, when in reality she had expended it, is not in error.

¶13 The District Court concluded from the record that Aiking-Taylor violated the MCPA in two ways: by deceptively implying she possessed Serang's security deposit, and by actually expending the security deposit. The MCPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Rohrer v. Knudson*, 2009 MT 35, ¶ 27, 349 Mont. 197, 203 P.3d 759; § 30-14-103, MCA. Because a security deposit remains the property of the tenant, the District Court held that it is patently unfair under the MCPA's prohibitions on "unfair or deceptive acts or practices" for a landlord to expend the deposit; such practices "offend[] established public policy and [are] either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *See Knudson*, ¶ 31; § 30-14-103, MCA. The District Court stated that it "offends established public policy" for landlords to use tenants' security deposits as a "slush fund for personal needs." It considered the practice "substantially injurious to consumers" given the many statutory safeguards surrounding security deposits and their return. The District Court stated further that Aiking-Taylor "acted deceptively" by initially representing that her reluctance to return the security deposit early was due to concerns about the state of the property, rather than the fact that she did not possess it.

9

¶14 Citing *Anderson v. ReconTrust Co., N.A.*, 2017 MT 313, 390 Mont. 12, 407 P.3d 692, Aiking-Taylor argues that to determine whether the alleged conduct violates public policy, courts look to interpretations of the Federal Trade Commission Act, federal precedent, and guidance from the Montana Department of Justice, something she claims the District Court failed to do. In *Anderson*, this Court noted that the MCPA does not define what constitutes an unfair or deceptive trade act or practice, with the Act instead expressing a legislative intent to give "due consideration and weight" to the sources Aiking-Taylor notes. *Anderson*, ¶ 19. After reviewing those sources, the Court then defined "an unfair act or practice [as] one which offends established public policy and which is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Anderson*, ¶ 19 (citing *Knudson*, ¶ 31). The District Court's Order explicitly references these concerns.

¶15 Aiking-Taylor does not cite to any federal or state sources she claims the District Court should have considered in reaching its conclusion or explain how the District Court misapplied them. She claims instead that "there is nothing in the law requiring [non-commercial landlords] to hold security deposits in a separate account, or even account for the funds at times when they are not due to be returned." The District Court, however, never concluded that Aiking-Taylor violated the MCPA by failing to hold Serang's security deposit in a different account or by holding it in some other form, such as cash. Rather, it found from the undisputed record that Aiking-Taylor expended the deposit and did not possess it in any form; it was this action the District Court concluded violated the MCPA. Regarding whether a landlord must account for a security deposit

10

before it is due to be returned, the District Court held that a security deposit remains the property of the tenant—held in trust by a landlord—until a landlord may draw upon it as provided by law. Aiking-Taylor presents no authority or argument challenging this holding. In light of the District Court's Order explicitly applying the definition of an "unfair act or practice" from *Anderson* and the lack of authority indicating it committed any error, we affirm the District Court's conclusion that Aiking-Taylor committed two violations of the MCPA. The District Court therefore did not err in its ruling on the MCPA claims.

¶16 We do not, however, affirm the District Court's award of $500 for each of Aiking-Taylor's MCPA violations. Section 30-14-133(1)(a), MCA, allows a party prevailing on a claim under § 30-14-103, MCA, to recover "actual damages or $500, whichever is greater." Here, Aiking-Taylor's actions caused Serang $1,200 in actual damages—the amount of his lost security deposit. Because the damages exceed the statutory penalty, Serang is entitled to recover his actual damages rather than the $500 statutory amount; by withholding the last month's $1,200 rent, however, Serang already has recovered those damages. We therefore reverse the District Court's award of $1,000 in statutory damages to Serang.

¶17 Finally, we affirm the District Court's award of $27,946.25 in attorney fees and $45 in costs. Section 70-24-442, MCA, part of Montana's Residential Landlord and Tenant Act, and § 30-14-133, MCA, both provide that the prevailing party in actions brought under their respective sections may be awarded reasonable attorney fees and costs. The rental agreement between Aiking-Taylor and Serang provides that: "[i]f any legal action or

11

proceedings be brought by either party of this Agreement, the prevailing party shall be reimbursed for all reasonable attorney's fees and costs in addition to other damages awarded." Serang is the prevailing party. Aiking-Taylor contests the District Court's award of attorney fees and costs on the basis of her MCPA argument, which we have not found persuasive. She does not challenge the reasonableness of the fees awarded. We therefore leave it undisturbed.

¶18 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. The District Court did not err in denying Aiking-Taylor's motion for summary judgment and granting summary judgment in favor of Serang. The District Court's Order and Judgment are affirmed in all respects except for the $1,000 in statutory damages awarded to Serang for Aiking-Taylor's two MCPA violations. The case is remanded for entry of an amended judgment to that effect.

/S/ BETH BAKER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE